## ARMSTRONG v. PAYNE. (No. 8033.)

(Court of Civil Appeals of Texas. Galveston. May 12, 1921.)

**1. Brokers ⊝52—Not entitled to commission for consummation of trade unless binding contract is made.**

Where a broker's contract entitles him to commission on consummation of a trade, he is not entitled to a commission unless at least a contract for the trade is entered into by the parties which is binding on them.

**2. Brokers ⊝63(4)—Refusal of other party's wife to join in conveyance as required by contract with broker's client for an exchange of lands prevents consummation of trade.**

A broker is not entitled to a commission for the consummation of a trade of land where the contract for the trade required the deed to the broker's client, which covered a homestead, to be executed by the grantor's wife, who was not a party to the contract, and the wife refused to sign such deed, so that the client was justified in refusing to perform his part of the contract.

**3. Brokers ⊝61(1)—Client's renunciation of contract to exchange lands held justified by demand of other party for a contract to protect latter against defects in title.**

Where the contract for exchange of lands, for consummating which plaintiff was to receive a commission, provided that, if either party failed to overcome defects in his title, the other party could remove such defects at the expense of the other, the demand of the other party that the broker's client execute an additional contract to protect him against defects in the title gave the client the right to decline to go on with the deal without being liable for the commission.

Appeal from District Court, Wharton County; M. S. Munson, Judge.

Action by R. A. Armstrong against J. C. Payne to recover a real estate brokers' com-

⊝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

mission. Judgment for defendant, and plaintiff appeals. Affirmed.

Cline & Ingram, of Wharton, and Fly & Ragsdale, of Victoria, for appellant.

Hall & Rowan and Kelley & Hawes, all of Wharton, for appellee.

GRAVES, J. Armstrong, as a real estate broker, sued Payne to recover a commission claimed to be due him from the exchange of certain lands between Payne and Talley, declaring upon this contract in writing:

"Articles of agreement between J. C. Payne and R. A. Armstrong in an exchange trade of property between J. C. Payne, of Wharton, and J. A. Talley, of Temple, Tex.

"In case of trade being consummated, J. C. Payne is to convey by deed two certain houses in the Vineyard addition of the town of Wharton, value of each placed at $600.00, and the balance of the commission to be paid in cash.

"The commission to be two and one-half per cent. of the valuation of the property conveyed to Talley. In the event a trade is consummated, Armstrong is to pay Payne's expenses to inspect the land. If the trade is made, Payne is to pay his own expenses.

"J. C. Payne.
"R. A. Armstrong.
"Signed in duplicate, Wharton, Texas, 9—24—14."

He averred that, pursuant to this agreement with Payne, he had brought the latter and Talley together, and that they had finally consummated an exchange between them at an agreed valuation of $66,420 of 753 acres of land in Wharton county, Tex., belonging to Payne, for 4,200 acres in Reagan county, Tex., belonging to Talley; that such exchange had been evidenced by a written contract between the parties under and by virtue of which each had gone into possession and assumed control, management, and ownership of the land so acquired by him from the other; that this consummation of the trade, under the terms of their own contract, had made Payne liable to him (Armstrong) for the agreed brokerage fee of 2½ per cent. on $66,420, or $1,660.50, $1,200 of which was payable in the two houses in the Vineyard addition to the town of Wharton, the balance of $460.50 in cash, and that Payne had refused to either convey him the two houses or pay the money.

Among a number of other defensive matters not deemed material for the purposes of this opinion, Payne answered that the trade between Talley and himself had never been consummated; that Talley had neither carried out his part of their contract nor offered to; that he had never been ready and willing to convey his Reagan county property to Payne in exchange for a deed from the latter alone to his lands in Wharton county; that the contract between them for the exchange of their lands was neither a valid and mutually binding one nor susceptible of

being specifically enforced, for all of which reasons no obligation under the express terms of his agreement with Armstrong had matured.

On the trial of the cause before a jury the evidence disclosed that, while there had been a preliminary occupation of or entry upon the Reagan county land by Payne and that in Wharton county by Talley, the deal had never in fact been consummated. The written contract expressly provided that the deeds from each to the other should be executed both by the husbands and their respective wives; that abstracts thereof should be furnished and the title to the lands approved by the attorneys for each party, with provision that the purchaser in either instance—in case the seller did not by a fixed date correct any defects in his title—might himself have that done at the seller's expense; that surveys of both properties should be made; that Talley should execute and deliver to Payne an indemnity bond to protect him against the possible loss of 200 acres of the Reagan county land on which a suit was pending.

By the undisputed evidence none of these requirements were met; no surveys were ever made; Talley did not put up the indemnity bond for the 200 acres; his attorney never approved Payne's title to the Wharton county land; Mrs. Payne not only never did move off of the land, which was her homestead and so known to be by Talley, but refused ever at any time either to sign a contract for its sale or to join her husband in a conveyance of it to Talley; and the latter positively testified more than once on the trial that he never did and never would have accepted a deed to it as a compliance with Payne's obligation to transfer it to him without her joinder. There was also no proof that Mrs. Talley ever agreed to or did join in a deed with Talley to Payne.

On the coming in of these facts, the court peremptorily instructed the jury to find for Payne, which was done, and this appeal by Armstrong complains of an adverse judgment entered upon the verdict.

[1] We think appellant misconceives the legal effect of the contract he sues upon. By its express terms he was to get no commission unless the trade was consummated, and by the undisputed evidence it never was consummated. The mere fact that Talley filed a suit against Payne to establish his legal title to the Wharton county lands and in the alternative for damages, which was later settled by compromise between them, would cut no figure here; this action being based upon an unsubstantiated claim that their exchange of properties had been duly effected.

In that class of land broker's contracts where it is stipulated that the agent is to be paid his commissions when the trade between his principal and the purchaser is con-

summated, he has not earned and is not entitled to the commissions unless the trade is consummated; there must at least have been procured such a contract for the disposition of the properties as could have been enforced by way of specific performance. Moss v. Wren, 102 Tex. 567, 113 S. W. 739, 120 S. W. 847; Britton v. Eagan, 196 S. W. 972; Griffith v. Bradford, 138 S. W. 1072.

[2] Not only, as already pointed out, was there in this instance no actual consummation of the exchange, but under the facts given the contract providing for it was not one as to which specific performance could have been enforced. Its terms required the joinder of Mrs. Payne, the purchaser was unwilling to accept a deed in its absence, the property was her homestead, and she refused to so join. The transaction was therefore blocked. Griffith v. Bradford, supra; Blair v. Lowrey, 164 S. W. 14.

[3] Nor will it do here to yet contend, as appellant does, that Payne's renunciation of the agreement to trade their properties excused Talley from performance of his undertakings thereunder, for the reason that, by Mr. Talley's own statement, before Payne made any objection to going on with the deal, he, upon the advice of his attorney, demanded of Payne as a prerequisite to closing the trade that he execute to Talley an additional contract to protect him against the defects in Payne's title. This was contrary to the terms of their contract, which gave Talley the right to have these matters met, its provision being:

"But if either party hereto fails or refuses to meet and overcome any defects in his title before January 1, 1915, then the purchaser shall have a reasonable time thereafter to have the same met and overcome, for which work the seller agrees to pay all reasonable and necessary expenses."

Not having chosen to avail himself of this privilege, he rejected Payne's title and demanded of him as a condition precedent to closing the trade a new contract and obligation not originally required. Payne was therefore not without the right to decline to go on with the deal.

We conclude that the court did not err in directing the verdict and entering the judgment. All assignments will be overruled, and an affirmance ordered.

Affirmed.

---

⏃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes