**SMITH v. JONES et al.   (No. 1114.)**

(Court of Civil Appeals of Texas.   Beaumont.
June 27, 1924.)

**1. Brokers ⊙⟶61(1)—Broker held not entitled to compensation where deal fell through.**

Where broker was entitled to compensation only in event of consummation of a trade, he never was entitled to compensation where defects were found in the title of the parties and were never cured, and deal fell through.

**2. Evidence ⊙⟶398—Conversation was merged in brokerage contract.**

Conversation respecting employment of real estate agent was merged into a subsequent written contract of employment.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Suit by W. A. Smith against Jesse H. Jones and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Gill Jones, Tyler & Potter, of Houston, for appellant.

Huggins, Kayser & Liddell and Andrews, Streetman, Logue & Mobley, all of Houston, for appellees.

O'QUINN, J.   Suit by appellant against appellees for commissions alleged to have been earned by appellant in a contract with appellees to bring about the exchange of certain properties between appellee Jones and T. S. Masterson.

The entire transaction, as alleged by appellant, was quite lengthy and complicated, but the effect of plaintiff's pleadings is: (1) That Jones agreed with Smith that if Smith would negotiate a sale of certain real estate situated in the city of Houston, Tex., to T. S. Masterson on certain specific terms and conditions, then Jones would pay Smith, as his commission, certain parts of the specific property Jones would receive from Masterson, representing the consideration moving from Masterson to Jones in the deal, upon the payment by Smith to Jones of the sum of $5,000; (2) that Smith did negotiate the deal, and that an agreement was made between Jones and Masterson in terms as specified by Jones; (3) that Masterson was ready, willing, and able to perform the agreement, and tendered the performance thereof, and that Smith was willing and able to pay the $5,000 by him to be paid, and tendered payment thereof; (4) that Jones breached the agreement with Masterson, and breached the agreement with Smith, whereby Smith was damaged in the sum of $15,000, that being the value of the property Smith was to have received as his commission, less the $5,000 he was to have paid Jones.

Appellants' pleading was based in the main upon the following written agreements,

which were attached to the petition as exhibits:

"State of Texas, County of Harris.

"This contract and agreement, made and entered into by and between N. E. Meador, hereinafter called 'first party,' and W. A. Smith, hereinafter called 'second party,' both of the county of Harris and state of Texas witnesseth:

"The first party undertakes to cause Texas Avenue Realty Company, a corporation organized and existing under the laws of the state of Texas, and having its principal office and place of business in the county of Harris and state of Texas, to convey by general warranty deed to Travis Masterson, of the county of Harris and state of Texas, the following described premises, to wit: Lots 1, 2, and 3, and the adjoining twenty-two and one-half (22½) feet by one hundred and fifty (150) feet of lots 11 and 12, in block 60, on the south side of Buffalo bayou, in the city of Houston, Harris county, Texas, together with all improvements thereon situated.

"In exchange for the conveyance of the premises above described, to said Smith, second party undertakes to cause said Masterson to convey by general warranty deed to said realty company (1) tract of 968½ acres of land, more particularly described as follows, to wit: Nine hundred and sixty-eight and one-half (968½) acres of land in Harris county, Texas, said land being situated 1½ miles south of Fairbanks, and being in two tracts, the first of which contains 474½ acres out of the W. C. R. R. surveys Nos. 7 and 9 and Frank Hamilton survey, which land is fully described in deed from Masterson Irrigation Company to Travis Masterson, as recorded in the deed records of Harris county, Texas, in book 405, pp. 621 and 622, and the second tract containing 494.13 acres, being a part of the A. T. Miles survey, fully described in deed from N. T. Masterson to Travis Masterson, which deed is recorded in the deed records of Harris county, Texas, vol. 409, p. 83, area and location to be verified by a survey at the expense of second party; (2) lots 8 and 9, in block 58 of the Montrose addition to the city of Houston, in Harris county, Texas.

"There is at this time outstanding an indebtedness, evidenced by vendor's lien notes, amounting to the principal sum of one hundred and fifty thousand dollars ($150,000), the same being a first lien upon the premises first above described. In the event of the exchange of property, as above set forth, second party undertakes to cause said Masterson to assume one hundred and five thousand ($105,000) of said indebtedness, and first party undertakes to cause said realty company to reduce said indebtedness to the extent of forty-five thousand dollars ($45,000). The payment of said indebtedness of one hundred and five thousand dollars ($105,000) to be assumed by said Masterson is to be so arranged that it will mature five thousand dollars ($5,000) in five equal annual payments as follows, to wit: One thousand dollars ($1,000) each in 1, 2, 3, 4, and 5 years, respectively, from December 1, 1920, and one hundred thousand dollars ($100,000) on June 14, 1927, evidenced by notes of the said

Masterson written in denominations of five hundred dollars ($500) each, with 6 per cent. interest from December 1, 1920, interest payable semiannually on the 1st day of January, and July of each year until all of said notes are paid, or until maturity thereof, and providing that ten thousand dollars ($10,000) or more of said notes may be paid at any interest-paying period at the option of the said Masterson or his vendees, by giving 15 days' notice of his intention to make said payments.

"First party is to secure said realty company within fifteen (15) days from the date hereof, to deliver to second party a complete abstract of title to the premises first above described, and second party undertakes to cause said Masterson, within said time, to deliver to said realty company a complete abstract of title to the premises to be by him conveyed to said realty company, as hereinbefore set forth. Upon delivery of said abstracts of title it shall become the duty of the respective parties to cause same to be promptly examined, and for such examination thirty (30) days' time shall be allowed, the time being of the essence of the contract, and prompt reports shall be made to the respective parties as to the approval or disapproval of the title. If the title is approved, the exchange of property, as hereinbefore set forth, shall be promptly consummated, and the payment of the indebtedness assumed by said Masterson promptly arranged and the new notes evidencing same promptly executed. If upon said examination defects appear, the respective parties shall have sixty (60) days within which to remedy same, and for that purpose procedure under this contract shall be postponed until same are remedied, or until the expiration of said sixty (60) days' time limit therefor.

"If the exchange of property herein contemplated is consummated, second party will pay first party the sum of, to wit, five thousand dollars ($5,000) in cash.

"This exchange of property when consummated shall be closed as of date December 1, 1920, and all rents, taxes, insurance, interest, etc., shall be prorated as of that date.

"This contract shall become binding upon first party if and when he causes said realty company to accept and become bound by the terms and conditions thereof, but not otherwise, and in like manner this contract shall become binding upon second party if and when said Masterson accepts and becomes bound by the terms and conditions hereof, but not otherwise.

"Executed at Houston, Tex., this 29th day of November, 1920.

        "[Signed]   N. E. Meador,
                 "First Party.
        "W. A. Smith,
              "Second Party."

"Houston, Texas, November 30, 1920.

"Mr W. A. Smith, City—Dear Sir: Confirming my verbal agreement with you, this is to say that, subject to all titles being good and you conveying or having conveyed to me by good and sufficient warranty title that certain tract or parcel of land situated in Houston, Harris county, Texas, being lots 1, 2, 3, and the adjoining 22½ feet by 150 feet of lots 11 and 12 out of block No. 60, S. S. B. B., said property facing 150 feet on Louisiana street by 122½ feet on Texas avenue, against which property

I agree to assume the indebtedness now existing thereon $105,000, to be evidenced by my notes of date December 1st, 1920, in the denominations of $500 each, and maturing $1,000 each in 1, 2, 3, 4, and 5 years, respectively, and $100,000 on June 14, 1927, bearing 6 per cent. interest from December 1, 1920, interest payable semiannually on the 1st day of January and July of each year until all of said notes are paid, or until maturity thereof, and providing that $10,000 or more of said notes may be paid at any interest-paying period at my option, or at the option of my vendee, by giving fifteen days' notice of intention of making said payment.

"In further payment of said property, I will convey to you or whomsoever you may direct, 968½ acres of land in Harris county, Texas, said land being situated about 1½ miles south of Fairbanks and being in two tracts, the first of which contains 474½ acres out of the W. C. R. R. survey Nos. 7 and 9 and Frank Hamilton survey, which land is fully described in the deed from Masterson Irrigation Company to me and recorded in the deed records of Harris county, Texas, in book 405, pp. 621 and 622, and the second tract contains 494.13 acres, being a part of the A. T. Miles survey, fully described in deed from N. T. Masterson to me, which deed was recorded in the deed records of Harris county, Texas, in volume 409, p. 83.

"I will also convey to you or whomsoever you may direct, lot 1, in block 6, Chapman's Third addition to the city of Houston, N. S. B. B. Harris county, Texas, and will convey lots 8 and 9, in block 58, Montrose addition, S. S. B. B., to the city of Houston, Harris county, Texas. I will also assign or deliver to you or to whomsoever you may direct, certificates covering forty-four shares of the capital stock of the Port Houston Land & Townsite Company, and 150 shares of the capital stock of the Monarch Oil Company.

"You are to use any part of the above-described properties in paying for the equity in the Louisiana street property hereby contracted by me to be purchased, and any excess therein that may be retained by you shall be your compensation for negotiating this transaction; it being expressly stipulated that I am not to pay any additional amounts other than those stated above, and you are to make your commission or profits out of said properties.

"I will deliver at once abstracts showing good title to all of said properties and allow thirty days' time within which the same may be examined, and use my best efforts to meet any objections raised thereto. This transaction shall be closed as of date December 1, 1920, and all rents, taxes, insurance, interest, etc., shall be prorated as of that date.

"Executed in duplicate.

    "Yours very truly,     T. S. Masterson.
  "Accepted:   W. A. Smith."

After pleading an employment by appellee Jones to sell the property situated at Louisiana and Texas avenues in the city of Houston upon the general terms shown in the written contract of date November 30, 1920, appellant further pleaded that the titles upon examination proved defective, and that certain record defects must be cured. He then pleaded a further and parol employment

·by Jones to negotiate a further agreement with Masterson, as follows:

" * * * Whereupon the defendants further employed the plaintiff to negotiate a further agreement with said Masterson to the effect that Jones would execute, or cause to be executed, a deed to the Louisiana street property to said Masterson and have the grantor in said deed bring suit to remove cloud from the title to said land against all persons designated by Masterson's attorneys as having any record interest therein, and prosecute the suit to final judgment in favor of plaintiff against all such defendants, which Jones represented that he was able to have done, and which he was able to have done,'otherwise he is liable for plaintiff's commission as herein alleged by reason of the breach of his implied contract that he could and would make title to the purchaser found by plaintiff; and that Masterson and wife would execute to the grantor in the aforesaid deed conveying the Louisiana street property warranty deeds conveying the Montrose property and the 968½ acres, and to plaintiff, W. A. Smith, to the Chapman addition lot, and indorse to plaintiff the stock certificates aforesaid, and would bring suit to remove cloud against all persons designated by defendants' attorneys as having any record or other interest in said 968½ acres, and prosecute said suit to final judgment in Masterson's favor against all such persons, and that all said deeds and stock certificates, together with the $5,000 to be furnished by said Smith, would be placed in escrow in any national bank in Houston, Texas, designated by the said Jones, to be delivered to the respective grantees and assignee as aforesaid ·when final judgments had been rendered in both said suits, and a survey of the lands recovered by Masterson in said suit furnished showing the acreage so recovered, and that for any shortage in the acreage of said Masterson land, by reason of said survey or of his failure so to recover the same, Masterson should pay and compensate the grantor of the Louisiana street property at the rate of $25 per acre for each acre not recovered or shown to be short by said survey,. it being understood between said Jones and Smith that Smith would receive the' stock and lot aforesaid as his commission for securing such agreement from Masterson, and would furnish the $5,000 in' cash, which plaintiff then and there agreed to do, and was ready, willing, and able to do; that plaintiff did secure the consent of said Masterson to such agreement and arrangement, and that said Masterson has been amply able, ready, and willing to carry out said agreement ever since, and that thereupon the agreement for the sale of said lots by the said Jones to the said Masterson, the purchaser secured by plaintiff, was finally consummated and agreed upon in all of its details, and the said Smith had thereby procured for the said Jones a purchaser ready, willing, and able to buy said lots at the price at which the defendant Jones had employed plaintiff to sell said lots; that on said occasion it was. agreed that the said Jones' attorneys would reduce this contract to writing and prepare the escrow' agreement as soon as possible; that ever since said occasion the said Masterson and Smith had been ready and willing to execute said escrow contract and consummate the transaction, and have repeatedly tendered and offered to do so, but the said defendant, Jesse H. Jones, has wholly failed and refused to consummate the transaction."

The defendants, appellees, answered, denying the contract to pay commission, and denying that any agreement was ever reached between Jones and Masterson for the sale of the property in question, and denying under oath the alleged agency of Jones for his codefendants.

The case was tried before a jury, but upon conclusion of the evidence the court instructed a verdict for all of the defendants. Appellant's motion for new trial having been overruled, he brings this appeal.

The parties testified at great length, the statement of facts covering 162 pages of typewritten matter. We do not believe it would serve any good purpose or add much to the elucidation of the question to make. a full statement of the facts shown; but we will content ourselves with announcing our conclusions based upon the record.

It is admitted by appellant that neither of the parties to the written agreements with him promised to pay him any commissions on the trade, but that each of them stipulated with him that he was to receive for his commissions any overplus in value that the property that was to be conveyed by Masterson to Jones had over and above the value of the property Jones was to convey to Masterson. The written agreements above set out conclusively show that appellant was not to receive any commission or compensation until and unless the trade was finally consummated. It is undisputed that each party was to show good title in and to the property to be exchanged, and that to that end the written agreements provided that each party was to furnish the other with a complete abstract of title to the property proposed to be conveyed, and that the parties should have 30 days in which to examine and pass upon same, and that, if defects appeared in the title, the respective parties were to have 60 days in which to cure same. The abstracts were furnished and objections found to both titles. Numerous objections were made to Masterson's title, at least some of it, and it was rejected by Jones' lawyer. There was also a missing link in the title to the property Jones‚ was to convey, which he said he could remedy by securing a deed. It was after the defects in the title had been discovered and the title to Masterson's property disapproved, that appellant alleges the parol agreement of Jones to employ him was had, to bring about what he calls the "escrow agreement" between the parties, looking to remedying the defects in the title of both parties, and the consummation of the deal, which "escrow agreement" he alleges he brought about, and which it is charged Jones breached, and which is made the basis of this suit.

[1] We think the judgment should be af-

firmed. The appellant was to receive pay only in the event of the consummation of the trade. It was never consummated. It was not consummated because the defects in the title of the parties were never cured. The defects were not cured because after what appellant alleges was his second employment, or parol agreement with appellee Jones was had as to the "escrow agreement," in the final discussion between the parties in their efforts to get together, Jones was not willing to enter into the escrow agreement until he had secured a deed to fill in the missing link in the title to the property to be conveyed by him, and said that it would require a short time, about two weeks, and wanted the matter of the escrow agreement delayed for that time, and for that purpose, to which Masterson, who had become impatient by reason of the many delays that had occurred, objected, and declared that he would not agree to the further delay of two weeks, unless Jones would put up $1,000 as earnest money, which Jones declined to do, and in the language of appellant, "the deal finally blew up." In other words, the carrying out of the undertaking by and through the escrow agreement proposed by appellant depended on the perfecting of the title before the deal could be consummated, and the titles were not perfected, mainly, we think, if not altogether, because Masterson refused to agree to any further delay in the matter, unless Jones would put up $1,000 as earnest money. It was not alleged nor attempted to be proved that Jones had at any time or in any manner contracted to put up any sum as earnest money, and this demand of Masterson was the injection into the negotiations of a new matter and a new condition relative to carrying out the deal, and which caused the trade to finally fail. It was Masterson, not Jones, that brought the proposed deal to failure.

Furthermore, the escrow agreement proposed to the parties by appellant, included the bringing of suits to perfect title to some of the titles to be conveyed by Masterson. In our opinion, it is not made to conclusively appear that such suits could or would have terminated successfully; it being undisputed that Masterson did not have record title to a portion of the property that he was to convey, but that he relied upon limitation title, which Jones was not willing to accept. It appears to be well settled that in this—

"class of land broker's contracts, where it is stipulated that the agent is to be paid his commissions when the trade between his principal and the purchaser is consummated, he has not earned and is not entitled to the commissions unless the trade is consummated; there must at least have been procured such a contract for the disposition of the properties as could have been enforced by way of specific performance."

Armstrong v. Payne (Tex. Civ. App.) 233 S. W. 139.

So, we think appellant's contention that he performed his part of the undertaking and had produced a purchaser for the Jones property that was ready, willing, and able to carry out the deal is not shown.

[2] However, it is indisputable that under the contracts set out appellant could receive commissions or profits on the transaction only upon the final consummation of the trade. It is equally certain that the trade, as made, could not be carried out because of the defective condition of Masterson's title; hence, as appellant's profits depended upon the trade being finally consummated, he is not entitled to recover. But appellant seeks to avoid this, contending that there was a further parol agreement and employment of him by Jones to negotiate what he terms the "escrow agreement," and it is upon this that he hangs his right to recover. Appellant, as shown above, does allege that Jones further employed him, after the titles were found to be defective, to negotiate said "escrow agreement," but, we have failed to find in the record any proof of such employment. Appellant, as we view the record, testified to only one conversation with Jones respecting his employment, and that was at the beginning of the matter, prior to the making of the written contract of date November 29, 1920. This employment was merged into, and his rights in respect thereto were fixed and limited to, the contract that he then made. We do not think the evidence in the record supports appellant's allegation and contention of the parol employment.

The judgment is affirmed.