James J. O'BOYLE, d/b/a Mid-Tex Properties, Appellant,

v.

DuBOSE–KILLEEN PROPERTIES, INC., and Commercial Properties Development Corporation, Appellees.

No. 17105.

Court of Civil Appeals of Texas.

Dallas.

June 28, 1968.

Rehearing Denied July 19, 1968.

**274**

Elihu E. Berwald, of Rosenfield, Mittenthal & Berwald, Dallas, for appellant.

Bill Waltrip, Ft. Worth, Edward B. Winn, of Lane, Savage, Counts & Winn, Dallas, for appellees.

* It is agreed by all parties that, by mutual mistake, DuBose-Killeen Properties, Inc. was erroneously referred to in many of the papers and exhibits involved in this case as "W. S. DuBose, Inc." The par-

CLAUDE WILLIAMS, Justice.

This is an appeal from a take nothing summary judgment in a suit to recover real estate broker's commission.

James J. O'Boyle, a duly licensed real estate agent under the laws of the State of Texas, and doing business as Mid-Tex Properties, brought this action against Du-Bose-Killeen Properties, Inc.* (hereinafter referred to as DuBose-Killeen), a Texas corporation, and Commercial Properties Development Corporation (hereinafter referred to as Commercial Properties), a Louisiana Corporation, alleging that the defendants were jointly and severally obligated to pay him the sum of $50,000, together with reasonable attorney's fees, which represented a real estate brokerage fee alleged to have been earned by him as a result of his efforts to secure a buyer for the sale of certain real estate located in Killeen, Bell County, Texas. He alleged that on or about August 12, 1965 DuBose-Killeen was the owner of the real property in question and that prior to such date it had engaged his services for the purpose of procuring a purchaser for said property at a price of $550,000. He asserted that he had entered into a written agreement with DuBose-Killeen whereby such corporation was to pay him a commission of $50,000 upon the sale price of $550,000; that pursuant to such agreement he procured Commercial Properties as a purchaser which agreed to purchase such real estate upon terms and conditions which were acceptable to DuBose-Killeen. He also contended that DuBose-Killeen and Commercial Properties had entered into a written contract wherein Commercial Properties had expressly assumed to pay him the real estate commission due upon the sale of the properties involved herein. O'Boyle claimed that he was the efficient and procuring cause of the contracts of

ties agree that wherever the name "W. S. DuBose, Inc." appears in the record it is intended to mean "DuBose-Killeen Properties, Inc."

sale and that both defendants became bound and obligated to pay him the commission.

O'Boyle filed his motion for partial summary judgment against DuBose-Killeen and Commercial Properties asking a judgment on the basic question of liability and leaving the question of amount of reasonable attorney's fees for further consideration. DuBose-Killeen and Commercial Properties filed their motions for summary judgments, supported by affidavits and depositions, and upon final hearing the trial court sustained both of these motions and denied the motion of O'Boyle.

## FACTS

At all times material herein appellant O'Boyle was a duly licensed real estate broker and James L. Carpenter was his agent. Appellee DuBose-Killeen was the owner of certain real estate in Killeen, Bell County, Texas known as Midtown Mall Shopping Center. DuBose-Killeen desired to sell such property and had carried on certain preliminary negotiations with Carpenter for the purpose of securing a purchaser. Carpenter submitted certain material concerning the Killeen property to Wilbur· Marvin, president of Commercial Properties. Marvin testified that on behalf of his company he prepared and signed an instrument dated August 12, 1965 and entitled "Proposal-Purchase". This instrument recites, at the outset thereof: "Following is an outline of terms and conditions upon which we will consider purchase of the captioned property for development with new retail facilities * * *."

This proposal, as originally drafted by Commercial Properties and submitted to DuBose-Killeen contained no reference to the payment of real estate broker's commission to O'Boyle.

Thereafter, August 16, 1965, DuBose-Killeen returned the instrument to Commercial Properties, same having been "Accepted, subject to mutually satisfactory contracts" by Thomas M. Eisner, Vice-President, and Jean Farley, Secretary, on behalf of DuBose-Killeen. The instrument, as returned, contained numerous deletions and also contained an attachment in writing entitled "Agreement" reading as follows:

"It is hereby understood and agreed between W. S. DU BOSE, INC. and MID-TEX PROPERTIES that upon closing of title covered by the attached contract between COMMERCIAL PROPERTIES DEVELOPMENT CORPORATION (Purchaser) and W. S. DUBOSE, INC. (Seller) that W. S. DU BOSE, INC. will pay to MID-TEX PROPERTIES (JOHN JAMES O'-BOYLE) A COMMISSION OF FIFTY THOUSAND DOLLARS ($50,000.00) in cash as payment in full for their services as brokers in said transaction, on sale price of $550,000."

Such "Agreement" was signed by John James O'Boyle for Mid-Tex Properties and accepted by W. S. DuBose, Inc. by Thomas M. Eisner. It is undisputed that this "Agreement" had not been attached to the original proposal dated August 12, 1965. It is admitted that the "Agreement" was prepared by O'Boyle's agent, Carpenter, and attached to the original proposal prior to the time it was signed by DuBose-Killeen and returned to Commercial Properties. The "Agreement" was in typewriting with the exception that the last phrase "on sale price of $550,000" had been added in ink prior to signing by Tom Eisner on behalf of DuBose-Killeen. Carpenter testified that other than the paper captioned "Agreement" neither he nor O'Boyle ever entered into any written contract or agreement with DuBose-Killeen concerning the sale of the Killeen property. He also testified that Commercial Properties never entered into any contract of any kind with O'Boyle.

The counter proposal of DuBose-Killeen dated August 16, 1965 contained the following provision:

"Leases must be unconditionally approved and accepted by Purchaser and his attorney by no later than August 20,

1965, 5:30 P.M., except that Seller agrees to obtain extension of at least six (6) months to the F. W. Woolworth lease within thirty (30) days from date of the formal Sales Contract.

"Purchaser to execute a formal and binding Sales Contract and have said contract in the office of W. S. DuBose, Inc., 3022 Sandage, Fort Worth, Texas, no later than 5:30 P.M. August 20, 1965, together with a deposit of Fifty Thousand Dollars ($50,000.00) to apply to purchase price."

This provision was not complied with and therefore the counter proposal expired of its own terms on August 20, 1965.

It is undisputed that thereafter DuBose-Killeen and Commercial Properties continued to negotiate with one another until a contract of sale was signed by DuBose-Killeen on September 24, 1965 and by Commercial Properties on October 5, 1965, such contract containing terms different from those contained in the counter proposal of DuBose-Killeen dated August 16, 1965. It is also undisputed that appellant O'Boyle had nothing to do with the negotiations leading to the execution of this contract.

Paragraph 11 of the final contract between DuBose-Killeen and Commercial Properties contained, inter alia, the following provisions:

"The sole obligation of Buyer with regard to any broker's commissions for the negotiation of this Contract of Sale will be to pay any commissions due Mid-Tex Properties, and Buyer agrees to hold the Seller harmless from the payment of any claim or commission payable or as may hereafter be determined payable to Mid-Tex Properties. In this connection, each party agrees to furnish legal counsel and other necessary protective steps in behalf of other party immediately upon same becoming necessary as a result of any claim referred to above.

"Seller warrants that there is no obligation with respect to commission to Mid-Tex Properties, other than the agreement attached to the Buyer's proposal dated August 12th, 1965, a copy of which is attached. Seller and Buyer both agree that this agreement was never consummated."

Due to the failure on the part of the parties to resolve certain conflicts in the terms of existing leases on the property in question and failure of efforts made by both of appellees to obtain necessary modifications of the existing leases so as to secure acceptable permanent financing, the contract of sale between the two appellees was never consummated. There is no evidence that either party to the contract did anything to prevent or hinder the consummation or performance of same.

## OPINION

In his first three points of error appellant O'Boyle earnestly and forcefully contends that the court erred in granting the motion for summary judgment filed by DuBose-Killeen and overruling his motion for partial summary judgment because, as a matter of law, DuBose-Killeen, pursuant to a written agreement, became legally bound and obligated to pay him $50,000 brokerage commission at the time he procured Commercial Properties as a buyer which was ready, willing and able to buy the real estate and which did later enter into a contract for the purchase of said property with DuBose-Killeen. He contends that the provision in the contract with respect to payment of said commission to be upon "closing of title" is to be construed as referring to the time of payment and not to a limitation upon the obligation of DuBose-Killeen to pay said commission, and therefore, based upon the undisputed record he is entitled to the commission as agreed upon in the "Agreement".

By counterpoints, appellees contend that pursuant to the "Agreement" between O'Boyle and DuBose-Killeen, the latter's obligation to pay a commission was made expressly contingent upon a condition be-

yond that implied by the ordinary broker's contract, to-wit, "upon closing of title" and since there had been no "closing of title" nor active conduct on the part of DuBose-Killeen to prevent or hinder performance of the contract, no commission is due to O'Boyle, as a matter of law.

Art. 6573a, Vernon's Ann.Civ.St. of Texas, known as the "Real Estate License Act," in Section 28 thereof, provides:

"No action shall be brought in any court in this State for the recovery of any commission for the sale or purchase of real estate unless the promise or agreement upon which action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunder lawfully authorized."

■ For a broker to utilize the courts of this state for recovery of his fees or charges for his services a strict compliance with the terms of the Real Estate License Act is required. Hall v. Hard, 160 Tex. 565, 335 S.W.2d 584 (1960). While no formal instrument is required the written contract or memorandum made mandatory by the statute must contain a promise to pay the agent a commission and properly describe the land to be sold. The essential elements of the contract must be apparent and may not be supplied by parol testimony. Denman v. Hall, 144 Tex. 633, 193 S.W.2d 515 (1946); Buratti & Montandon v. Tennant, 147 Tex. 536, 218 S.W.2d 842, 9 A.L.R.2d 742 (1949); and Struller v. McGree, 374 S.W.2d 256 (Tex.Civ.App., San Antonio 1964, writ ref'd n. r. e.).

■ The only writing signed by appellant O'Boyle and DuBose-Killeen, one of the parties sought to be charged, is that entitled "Agreement" dated August 12, 1965 and admittedly prepared by O'Boyle's agent, Carpenter. Neither appellant nor the appellees assert any claim that the "Agreement" is ambiguous and it therefore becomes our duty to ascertain the intention of the parties from the written instrument itself, without the aid of parol evidence. Steeger v. Beard Drilling, Inc., 371 S.W.2d 684 (Tex.1963); Ross v. Burleson, 274 S.W.2d 105 (Tex.Civ.App., San Antonio 1954); Struller v. McGree, 374 S.W.2d 256 (Tex.Civ.App., San Antonio 1964, writ ref'd n. r. e.).

A careful analysis of the "Agreement" reveals that DuBose-Killeen agreed (1) to pay O'Boyle the sum of $50,000 as commission for his services, (2) upon closing of title (3) covered by "the attached contract" and (4) "on sale price of $550,000." The only attachment is the counter proposal of DuBose-Killeen to Commercial Properties in response to the original proposal dated August 12, 1965.

■ Appellant's prime contention under these points of error is that the "Agreement" should be so construed as to hold as a matter of law that the parties thereto intended the limiting words "upon closing of title" to be construed only as time for payment and not a condition precedent for the payment of the commission. Appellees, in response to such contention, point to the express wording of the "Agreement" together with the stated provisions contained in the "attached contract" to demonstrate the true intention of the parties to be that until the happening of the condition precedent, namely, the "closing of title" no commission would be due appellant O'Boyle. We agree with appellees and not with appellant.

Obviously the writing relied upon by appellant is not the usual real estate broker's commission agreement wherein commissions are due when the broker obtains a prospective purchaser who is ready, willing and able to buy the property on terms suitable to the seller. A careful reading of the counter proposal to which the "Agreement" is attached renders it obvious why the agent's commission in this case was conditioned upon "closing of title" rather than the usual language of such agreements. This property was to be a shopping center occupied by numerous tenants. The counter

proposal expressly provided that the leases to the various tenants must be unconditionally approved and accepted by Commercial Properties on a given date and that BuBose-Killen obligated itself to obtain certain extensions of the Woolworth lease, all being conditions known to appellant O'Boyle. The mere execution of a contract of sale, without an unconditional acceptance of the lease, would give the seller little assurance that the transaction would actually be consummated by the closing of title. The counter proposal expressly provided for mutually satisfactory contracts which contemplated acceptable leases in form acceptable for permanent financing. Appellant did not secure for DuBose-Killeen a buyer who was ever committed to take the leases in their existing form, but only one who was willing to close title only if the necessary lease modifications could be effective within a definite period of time.

It has been held that the employment in such contracts of words such as "when", "after", or "as soon as" or "when the sale is completed" or "upon delivery of the deed and payment of the consideration" or "at the date of passing title" or "upon consummation of deal", or such similar language clearly indicates a promise is not to be performed except upon the fulfillment of the condition. Williston on Contracts, Vol. 5, § 671, and cases therein cited. Probably one of the leading cases directly supporting the interpretation of the contract here involved is Amies v. Wesnofske, 255 N.Y. 156, 174 N.E. 436, 73 A.L.R. 918 (N.Y.1931), which was concerned with a promise by the sellers of land under a written contract to pay a broker a certain sum of money "on the closing of title." The court, after a complete examination of the authorities throughout the nation, held that such a promise was not merely one to pay on the date fixed by the contract for the closing of title, but one to pay such a commission only if closing of title should occur. For additional authorities, both in Texas and in other states, supporting this interpretation of the contract

here under consideration, see: Silhouette Realty, Inc. v. Welson, 24 A.D.2d 212, 265 N.Y.S.2d 193 (1st Dept. 1965); Beattie-Firth, Inc. v. Colebank, 143 W.Va. 740, 105 S.E.2d 5, 74 A.L.R.2d 431 (1958); Hamrick v. Cooper River Lumber Co., 223 S.C. 119, 74 S.E.2d 575 (1953); Prince George's Country Club, Inc. v. Edward R. Carr, Inc., 235 Md. 591, 202 A.2d 354 (1964); 31 Columbia L.Rev. 701-2; Ferguson v. Mansfield, 114 Tex. 112, 263 S.W. 894 (1924); Porizky v. United Fidelity Life Ins. Co., 178 S.W.2d 157 (Tex.Civ.App., Dallas 1943, writ ref'd); Smith v. Jones, 264 S.W. 573 (Tex.Civ.App., Beaumont 1924); Lucas & Co. v. Thompson, 29 S.W.2d 1024 (Tex. Com.App.1930).

We are not unmindful of the force and persuasiveness of appellant's argument, together with the authorities cited by appellant in support of his contention, but we believe that the authorities above cited represent the better rule of law applicable to the factual situation here presented. We therefore overrule appellant's points 1, 2 and 3 and sustain appellees' counterpoints directed thereto.

By his fourth and fifth points of error appellant contends (a) that the trial court erred in granting DuBose-Killeen's motion for summary judgment because its written agreement to pay appellant a commission complies with Sec. 28, Art. 6573a, V.A.C.S., and that such agreement became effective and payable upon execution by DuBose-Killeen and Commercial Properties of the contract of sale dated September 24 and October 5, 1965; and (b) that the trial court erred in granting Commercial Properties' motion for summary judgment because such company expressly assumed the binding obligation to pay appellant the real estate commission. Again we find ourselves unable to agree with appellant.

Appellant concedes that if he is to recover the brokerage commission he must do so pursuant to a writing conforming to Sec. 28, Art. 6573a, V.A.C.S. The "Agreement"

attached to appellee DuBose-Killeen's counter proposal expired by its own terms. Admittedly there was no "closing of title" nor the payment of the sale price. The "attached contract" contained an unequivocal condition concerning approval and acceptance of leases which was never complied with. There was no other writing, agreement or contract between appellant and DuBose-Killeen extending the period of time provided for in the contract, or varying the conditions precedent to closing of the agreement and payment of commission. Neither do we find an oral agreement between the parties, made while the same was executory, extending the time of consummation. Accordingly, we conclude that appellant cannot legally rely upon the "Agreement" to satisfy the conditions of Art. 6573a, Sec. 28, V.A.C.S. Daltex Cattle Co. v. Hill, 43 S.W.2d 605 (Tex.Civ.App., Amarillo 1931); Dracopoulas v. Rachel, 411 S.W.2d 719 (Tex.1967).

Appellant's contention that, pursuant to the terms of Paragraph 11 of the contract of sale entered into between the two appellees on September 24 and October 5, 1965, appellee Commercial Properties expressly assumed in writing the obligation of DuBose-Killeen to pay appellant's commission cannot be sustained. Rather than expressly and unequivocally assuming to pay a commission to appellant the wording of Paragraph 11 of the contract negates such idea. Reference to the paragraph in question, copied above, immediately discloses the intention of the parties to be that there is no obligation in law with respect to a commission to Mid-Tex Properties other than the agreement attached to buyer's proposal dated August 12, 1965 and that such agreement was never consummated. Accordingly, the parties, in the subsequent contract, expressly said that if Mid-Tex did assert a claim for commissions and if such commissions were held to be due then Commercial Properties would assume the sole obligation of paying same. The idea of resisting and denying appellant's claim for commission

is clearly embodied in Paragraph 11 wherein the parties agreed to furnish legal counsel, and other necessary protective steps, in behalf of each other to resist any claim which might be asserted. Far from being an unequivocal agreement to pay a commission, or assume the payment thereof, the express wording of the paragraph of the contract in question does just the opposite. As stated in connection with our discussion of points 1–3, inclusive, our courts require a strict compliance with the terms of the Real Estate License Act if the broker is to use the court for recovery of his fees. Appellant's points 4 and 5 are overruled.

Appellant next argues, in his sixth point, that the summary judgment was improperly sustained on behalf of Commercial Properties because, as a matter of law, appellant was a third party beneficiary to the contract between DuBose-Killeen and Commercial Properties in which Commercial Properties assumed all liability for real estate commission which DuBose-Killeen might be found accountable. Appellees counter this contention by first denying that appellant was actually a third party beneficiary under the contract of sale but assuming, *arguendo*, that he was, his rights can rise no higher than the rights of the contracting parties and since the contract was not consummated, not due to the fault of either party, there could be no obligation to pay any commission to appellant.

In the very recent case of Republic National Bank of Dallas v. National Bankers Life Ins. Co., 427 S.W.2d 76 (Tex.Civ.App., Dallas 1968), we had occasion to review the authorities on the question of third party beneficiary contracts. Applying well settled principles of law we reiterated the rule that whether a party is a third party beneficiary to a contract depends upon the intention of the parties to the contract as expressed in the language used in the instrument itself. Parties are presumed to contract for themselves and it follows that a contract will not be construed as having been made for the benefit of a third

person unless it clearly appears that such was the intention of the contracting parties. Citizens Nat. Bank in Abilene v. Texas & P. Ry. Co., 136 Tex. 333, 150 S.W.2d 1003 (1941). Applying the same principles of law to the contract between appellees, we find no legal basis for appellant's contention that he was made a third party beneficiary under the agreement. A casual reading of the agreement itself reflects the opposite intention on the part of the contracting parties. Accordingly, we hold that appellant was not, as a matter of law, a third party beneficiary to the contract between appellees.

Appellees are correct in their alternative contention that, assuming appellant to be a third party beneficiary, his rights could rise no higher than those of the contracting parties and since the agreement was never consummated no obligation to pay a commission arose. Waggoner v. Herring-Showers Lumber Co., 120 Tex. 605, 40 S.W.2d 1 (1931); Dalhart Gas Co. v. Stafford, 57 S.W.2d 926 (Tex.Civ.App., Amarillo 1933). Appellant's point 6 is overruled.

In his seventh and eighth points of error appellant seeks to invoke the doctrine of estoppel against appellees and thereby defeat the granting of the summary judgment against him. In his brief he says:

"Admittedly, Appellant did not become entitled to his commission upon the execution of Exhibit 'A' by appellee, DuBose-Killeen Properties, Inc., because of the changes made by said Appellee after the other Appellee had executed same, but unquestionably, Appellant became entitled to his commission when the Appellees executed Exhibit 'B', which they did without Appellant's intervention, assistance or knowledge. By undertaking the burden of the negotiations upon themselves, and without consulting Appellant, and by entering into a contract of sale of the property which were satisfactory to Appellees, Appellee, DuBose-Killeen Properties, Inc., is estopped to assert that Appellant did not furnish a customer, ready, willing and able to purchase the property (since Appellees actually entered into the contract of purchase and sale by executing Exhibit 'B'), and Appellee, Commercial Properties Development Corporation, is estopped to assert that it is not liable because it obligated itself in writing when it executed Exhibit 'B' to pay the brokerage commission which Appellee, DuBose-Killeen Properties, Inc., had contracted to pay Appellant."

The doctrine of estoppel is not available to appellant under the undisputed facts revealed by this record. There are no facts in this record to establish that either of the appellees deliberately or with any other purpose of evading the commission obligation, failed to carry out the terms of either of the agreements involved in this case. The reason the deal was not finally consummated was the failure, without fault of appellees, to secure a remedy to the defaults under the contract of sale relating to the various leases and long term financing. Appellant's seventh and eighth points are overruled.

Appellant's ninth and last point of error presents a question of whether or not there was an issue of fact presented with reference to whether appellant was the efficient and procuring cause of the contract of sale which was ultimately entered into between appellees. Since we have held, as a matter of law, that appellant cannot legally recover a commission under any of the theories advanced, such question becomes irrelevant. Appellant's point 9 is overruled.

Finding no reversible error presented, we hold that the rendition of the summary judgment was proper and accordingly the judgment based thereon is affirmed.

Affirmed.