Padmavathy POTHARAJU, Individually, as Personal Representative of the Estate of Rao Potharaju, Deceased, and as Next Friend of Karthik Potharaju and Anila Potharaju, Minor Children, Plaintiffs,

v.

JAISING MARITIME, LTD. and Burns International Security Services, Inc., Defendants.

No. 1:00–CV–292.

United States District Court, E.D. Texas, Beaumont Division.

March 26, 2002.

Myra Gregory of Parker and Parks, Port Arthur, TX, for Padmavatby Potharaju.

James Philip Spencer, Jr., Groves, TX, for Karthik Potharaju.

Michael Thomas Bridwell, Strong, Pipkin, Nelson & Bissell, Beaumont, TX, for Great Lakes Carbon Corp.

Thomas W. Duesler, Harris, Lively & Duesler, Beaumont, TX, for Burns International Security Services

Alan B. Folger, John Bradley Mitchell, Roberts Markel and Folger, Houston, TX, for M.T. Maritime Management Corp.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO VACATE AND/OR TO RECONSIDER SUMMARY JUDGMENT AND FOR A REHEARING AND MOTION TO RECONSIDER PLAINTIFFS' MOTION FOR CONTINUANCE

SCHELL, District Judge.

This matter is before the court on "Plaintiff's Motion To Vacate And/Or To Reconsider Summary Judgment And For A Rehearing And To Reconsider Plaintiff's Motion For Continuance" filed on January 31, 2002 (Dkt.# 55). Plaintiffs filed this motion requesting the court to reconsider its January 28, 2002, order granting summary judgment on behalf of Defendant Burns International Security Services Incorporated ("Burns"). On February 4, 2002, the court held a hearing at which counsel for Plaintiffs and counsel for Defendant Burns were present. At that hearing, Plaintiffs urged the court to allow them extra time to examine newly discovered evidence that was not disclosed to them at the time Burns filed its motion for summary judgment in August, 2001. The court granted Plaintiffs' request for additional time, requiring Plaintiffs to file any supplemental briefing by March 6, 2002, and giving Burns until March 13, 2002, to file its response. The court also set a hearing for March 15, 2002. When certain complications arose, the court adjusted the above schedule, making Plaintiffs papers due on March 13, 2002, and Burns's response due on March 20, 2002, with the hearing rescheduled for today, March 26, 2002, at 9:00a.m. Plaintiffs timely filed a "Supplemental Response In Opposition To Defendant's Motion For Summary Judgment," on March 13, 2002 (Dkt.# 61). But, since the court has already granted summary judgment in favor of Burns in this case, the operative motion is Plaintiffs' own motion for reconsideration. In response, Burns filed a "Reply To Plaintiffs' Response," which would more appropriately be deemed a response to Plaintiffs' supplemental motion to reconsider summary judgment and denial of Plaintiffs' motion for continuance (Dkt.# 62). Upon consideration of the parties' written submissions, exhibits, and the applicable law, and after hearing oral argument from counsel for both Plaintiffs and Burns, the court is of the opinion that Plaintiffs' motion to vacate and/or reconsider summary judgment should be DENIED. Accordingly, Plaintiffs' motion to reconsider its motion for continuance should be deemed MOOT.[1]

## I. BACKGROUND

Plaintiffs filed this action alleging that Burns negligently caused the death of Rao Potharaju ("Potharaju") when he drowned

---

**1.** Plaintiffs also filed a "Motion For Leave To File Fifth Amended Complaint" on March 12, 2002 (Dkt.# 60). Burns filed its "Objection And Response To Plaintiffs' Motion For Leave To Amend Their Complaint" on March 20, 2002 (Dkt.# 63). Plaintiff then filed a "Response To Defendant's Objection To Plaintiffs' Motion To Amend Complaint" on March 22, 2002 (Dkt.# 64). In Plaintiffs' motion for leave to file a fifth amended complaint, they propose to assert new and different a causes of action against Burns: breach of contract, alternatively asserting that Potharaju was a third-party beneficiary, and two separate claims for negligent performance of an undertaking pursuant to RESTATEMENT (SECOND) TORTS § 323, 324A. See Pls.' Mot. Leave File Fifth Amen. Compl. at unnumbered 2. Due to the court's conclusion in this memorandum and opinion, Plaintiffs motion seeking leave to file a fifth amended complaint with respect to Burns is DENIED. The court will allow Plaintiffs time to file a fifth amended complaint with respect to the remaining Defendants by separate order.

at the Great Lakes Carbon facility in Port Arthur, Texas, because Burns breached a number of duties that Plaintiffs claim it owed to Potharaju. In their Fourth Amended Complaint, Plaintiffs alleged claims under the Texas Wrongful Death Act and the Texas Survival Statute, as well as claims for common law negligence and gross negligence under Texas state law. Burns contracted with Great Lakes Carbon on May 5, 1995, to provide security services at the Great Lakes Carbon facility in Port Arthur.

On January 28, 2002, the court granted Burns's motion for summary judgment, finding that Burns did not owe a duty to provide security services to Potharaju under the written agreement with Great Lakes Carbon and did not assume such a duty under the terms of the agreement or the facts of the case.[2] In particular, the court noted that whether or not Burns owed a duty to Potharaju in this case "depends solely on the terms of the agreement between Great Lakes Carbon and Burns" because the agreement is the " 'entire agreement and understanding between the parties.' " Mem. Op. Order Granting Burns Mot. Summ. J. at 8 (citations omitted). The court concluded that, under the agreement, Burns only owed a duty to provide security services and personnel to Great Lakes Carbon, and not Potharaju. Moreover, Burns did not assume a duty to Potharaju because "any steps Burns may have taken to make the premises safe were undertaken solely for the benefit of Great Lakes Carbon," and Plaintiffs made no allegations indicating that Burns affirmatively undertook to make the premises safe for Potharaju. *Id.* at 10.

When Plaintiffs filed their motion to reconsider, they argued that summary judgment was improper because Burns had neglected to disclose documents which would preclude summary judgment. Plaintiffs attached one of these documents to their motion, a document written for Burns's employees entitled "Post Orders." They contended that the "Post Orders" document defines what security services Burns agreed to perform at the Great Lakes Carbon facility and, as such, the document is part of the written agreement between Burns and Great Lakes Carbon. Ultimately, Plaintiffs claimed that the sum of the language in the "Post Orders" creates a duty to protect guests, like Potharaju, while on the premises of the Great Lakes Carbon facility. Further, Plaintiffs believed that documents other than the "Post Orders" existed, but were not timely disclosed, which would show that Burns owed a duty to Potharaju.

As mentioned above, the court held a hearing on February 4, 2002, wherein both parties had the opportunity to discuss Plaintiffs' motion to reconsider. During the hearing the court made clear that it had considered the effect, if any, that Plaintiffs' motion and the "Post Orders" may have on the court's previous order granting summary judgment in favor of Burns. The court observed that, pursuant to section 13 of the written agreement between Burns and Great Lakes Carbon, the "Post Orders" document merely sets forth the security services to be performed for the benefit of Great Lakes Carbon and does not unilaterally create any duty to a third party who is not a signatory to the contract. Additionally, the court mentioned that section 5(d) of the written agreement provides that the security services performed pursuant to the agreement are solely for the benefit of Great Lakes Carbon. Essentially, the court stat-

---

**2.** Because the court found that Burns owed no duty to Potharaju as a matter of law, the court held that Plaintiffs could not maintain their claims under the Texas Wrongful Death Act and the Texas Survival Statute or their claim for gross negligence.

ed that Burns did not have a duty to Potharaju under the contract, and that the only other possible way to find a duty would be if Plaintiffs uncovered evidence showing that Burns performed an act or series of acts by which they voluntarily undertook a duty to Potharaju. Hence, the court allotted Plaintiffs extra time to uncover any documents that may show that Burns, through its actions, undertook a duty to Potharaju. Plaintiffs were also given time to depose officials employed by Burns who may have knowledge regarding any temporary post orders or daily logs listing the day-to-day duties of Burns's security guards on the Great Lakes Carbon premises. Now that Plaintiffs' have had the opportunity to thoroughly peruse all pertinent documents and depose the desired officials, the court will proceed to analyze Plaintiffs' motion to reconsider in light of the supplemental material filed.

## II. DISCUSSION

■ Plaintiffs begin their supplemental briefing by reiterating the arguments that they first submitted to the court in their motion to reconsider and subsequently discussed with the court at the hearing on February 4, 2002. In essence, they argue that the written agreement between Burns and Great Lakes Carbon should be read to include the "Post Orders" document. The court agrees. Section 13 of the "Security Services Agreement" promulgates the scope of security services and states that the "[a]greement and written schedule of Personnel assessments, patrol inspections and post orders ... collectively set forth the Security Services to be performed." Pls.' Supp. Resp. Ex. 1 at unnumbered 2. Plaintiffs then attempt to persuade the court that the "Post Orders" document and the two-page security services agreement are in conflict. They implore the court to "harmonize" the meaning of the contract in order to "give effect" to all its provisions. *Id.* at 4 (emphasis omitted).

Next, Plaintiffs cite particular language within the "Post Orders" document which they claim proves that the contract between Burns and Great Lakes Carbon creates a duty that Burns owes to invitees like Potharaju. For instance, in the "Primary Mission Statement," Burns pledges to "[a]ssist visitors," "[p]rotect personnel on the premises," "[s]erve as a deterrent to persons intent on committing criminal acts," "[l]ook for and report potential hazards," and "[w]atch for the use of illegal drugs and consumption of alcohol." *Id.* Ex. 1(B) at 1. Under the section labeled "Personal Safety," Burns states that it is "concerned about the safety of its Security Officers, site supervisors, and the client's personnel and guests." *Id.* Ex. 1(D) at 6. The document further instructs security guards that part of their job includes "detecting and reporting safety hazards" and that they should report any hazard until the area is safe for the guard as well as "the client's employees and guests." *Id.* The section in the "Post Orders" document on "Access Control" tells security guards that they should "[w]atch for unusual events" such as "[d]rinking alcoholic beverages" and orders them to "[q]uestion suspicious persons...." *Id.* Ex. 1(F) at 16. Finally, the section regarding guard "Patrol" duties states that guards should respond immediately to "anything that may endanger people and/or property...." *Id.* Ex. 1(G) at 19.

In the order granting summary judgment, the court based its analysis of Burns's alleged duty on the two-page agreement executed by Burns and Great Lakes Carbon simply because that was the only purported contract before the court at that time. However, before the hearing on February 4, 2002, the court had the opportunity to examine the "Post Orders" document, which supplies the bulk of the argument in Plaintiffs' supplemental briefing. The parties and the court discussed

the effect of the "Post Orders" on the court's order granting summary judgment at the hearing. Accordingly, the court's analysis regarding the effect of the "Post Orders" on the contractually based duty allegedly owed by Burns to Potharaju is virtually the same now as it was on February 4.

■ The court finds that the "Post Orders" document is part of the written agreement between Burns and Great Lakes Carbon and that the document offers general guidelines as to what services Burns is obligated to provide to its client, Great Lakes Carbon. However, the agreement is very explicit in stating that the services Burns is required to perform under the agreement are solely for the benefit of Great Lakes Carbon; thus, the court finds that neither the "Post Orders" nor any of Plaintiffs newly unearthed evidence materially alters the thrust of the agreement. *See* Pls.' Supp. Resp. Ex. 1 at unnumbered 1. The agreement expressly refuses to confer any rights on any parties other than Great Lakes Carbon, whether those parties are purported third party beneficiaries or otherwise. *Id.* (specifically in reference to section 5(d)).

Moreover, contrary to Plaintiffs assertions, the mere fact that Burns signed a contract with Great Lakes Carbon containing language stating that Burns seeks to protect visitors and personnel on the premises, watch for the consumption of alcohol, and report safety hazards does not somehow create a duty running from Burns to all seamen who henceforth set foot on the Great Lakes Carbon facility. Likewise, no duty to Potharaju is created simply because Burns is "concerned about the safety of ... the client's ... guests." *Id.* at Ex. 1(D) at 6. Notwithstanding those about whom Burns is "concerned," the intent of the parties in forming the agreement controls. In this case, ascertaining the parties' intent is not difficult due to the language in section 5(d). Pls.' Supp. Resp. Ex. 1 at unnumbered 1 ("The services provided under this Agreement are solely for the benefit of the Client and neither this agreement nor any services rendered hereunder confer any rights on any other party...."). The agreement was executed in 1995 by Burns and Great Lakes Carbon and, when read in its entirety, the only duty that the parties intended to create is owed by Burns to Great Lakes Carbon. Thus, the court stands by its previous ruling on Burns's motion for summary judgment. After viewing the written agreement between Burns and Great Lakes Carbon as a whole, it is clear to the court that Burns owed no duty to Potharaju under the terms of the agreement.[3]

■ Plaintiffs, in their supplemental brief, also argue that Potharaju was owed a duty by Burns because he was a third party beneficiary of the agreement between Burns and Great Lakes Carbon. Under Texas contract law, "whether a party is a third party beneficiary to a contract depends upon the intention of the parties to the contract as expressed in the language used in the instrument itself." *O'Boyle v. Dubose–Killeen Prop., Inc.,* 430 S.W.2d 273, 279 (Tex.Civ.App.-Dallas 1968) (citing *Republic Nat'l Bank of Dallas v. Nat'l Bankers Life Ins. Co.,* 427 S.W.2d 76 (Tex.Civ.App.-Dallas 1968)). Plaintiffs

**3.** The court further notes that, although Plaintiffs did not allege a claim against Burns for breach of contract until their motion for leave to file a fifth amended complaint, they could not maintain such a claim because Potharaju was not a party to the contract in question. Plaintiffs' claim appears to be an attempt to prove that Burns owed a duty to Potharaju under the contract between Burns and Great Lakes Carbon. However, pursuant to the court's discussion above, Burns owed no duty to Potharaju under the contract. Thus, any claim by Plaintiffs against Burns for breach of contract would be untenable.

correctly point out that the general "presumption is that parties contract only for themselves, and a contract will not be construed has having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties." *Knox v. Ball*, 144 Tex. 402, 191 S.W.2d 17, 21 (1945); *see also O'Boyle*, 430 S.W.2d at 279–80 (both citing *Citizens Nat. Bank in Abilene v. Tex. & P. Ry. Co.*, 136 Tex. 333, 150 S.W.2d 1003 (1941)). Applying the law to the contract in question, the court finds no legal basis for Plaintiffs' contention that Potharaju was made a third party beneficiary in the contract between Burns and Great Lakes Carbon. As noted by the court both in its order granting summary judgment and at the hearing on February 4, section 5(d) of the agreement declares that the services to be provided by Burns under the agreement are for the benefit of Great Lakes Carbon, and not any purported third party beneficiary. Section 5(d) clearly expresses the intention of the parties when they entered into the agreement.

Nevertheless, Plaintiffs argue that Great Lakes Carbon intended Burns to protect its guests because the "Post Orders" document states that Burns is concerned about the safety of both the client's personnel and its guests. The court is not persuaded by this contention. As discussed in detail above, the "Post Orders" document determines the security services that Burns contracted to provide to Great Lakes Carbon only. References in the "Post Orders" to "guests," "visitors," and watching for "consumption of alcohol" do not, as a matter of law, evince an intention on the part of Burns and Great Lakes Carbon to make invitees, like Potharaju, third party beneficiaries of the contract. Nor does such terminology constitute a waiver of section 5(d) of the contract. Therefore, Potharaju was not a third party beneficiary of the agreement executed between Burns and Great Lakes Carbon.

Lastly, Plaintiffs aver that Burns assumed a duty to protect Potharaju because Burns "undertook to render security services which it should have recognized as necessary for the protection of all seamen" whose ships dock at the Great Lakes Carbon facility. Pls.' Supp. Resp. at 14 (citing Restatement (Second) Torts § 323, 324A (1965)). As discussed above, Burns did not assume a duty to Potharaju under the terms of the agreement, even when considering the "Post Orders." Further, Plaintiffs have produced no evidence that Burns undertook a duty to Potharaju through its actions at the Great Lakes Carbon facility. The court noted in its order granting summary judgment that "Plaintiffs allege that Burns's employee failed to act to protect Potharaju from his own intoxication. However, Plaintiffs do not cite any affirmative act performed by Burns that constitutes an undertaking to render services to Potharaju or any other invitee." Mem. Op. Order Granting Burns Mot. Summ. J. at 10. The same is true here. After additional time and discovery, Plaintiffs still fail to supply the court with any evidence showing that Burns undertook to make the premises safe for Potharaju. Rather, they assert without support that "[e]very time a guard assumed his or her post, made a patrol or did anything to further the security of the Great Lakes Carbon facility, they were undertaking to render services to the seamen. . . ." This naked assertion is not enough to create a genuine issue of material fact on the issue of duty.

## III. CONCLUSION

After reviewing the summary judgment record and all additional evidence furnished by Plaintiffs, the court concludes that there are no genuine issues of material fact regarding whether Burns owed a duty to Potharaju. Plaintiffs failed to provide the court with any new information

that would alter its initial decision to grant Burns's motion for summary judgment. As a result, Plaintiffs' motion to vacate and/or reconsider summary judgment is hereby DENIED, and Plaintiffs' motion to reconsider its motion for continuance is hereby MOOT. It is so ORDERED.