# CHARLESTON

HUGILL *et al. v.* WEEKLEY *et al.*

Submitted March 24, 1908.   Decided March 31, 1908.

1. BROKERS—*Right to Commissions—Evidence.*

The contract of real estate brokers provided that they were "to make all the effort possible to make sale of the property, for which they are to receive 5 per cent. commission for their services out of the first payment." They procured a purchaser, who was accepted and entered into a contract of sale and purchase with their principals at a stipulated price, to be paid in full at a stipulated time on delivery of deed. *Held:* That the brokers were entitled to recover the commissions according to the contract, notwithstanding the purchaser, because of alleged misrepresentation by seller's employee, refused to complete the contract or to pay any part of the purchase money. (p. 211.)

2. SAME.

When a real estate broker has done all required of him by his contract, unless limited by express provisions thereof, he is entitled to the compensation provided for therein. (p. 211.)

3. SAME—*Default of Customer.*

Where a brokerage contract makes an actual sale a condition precedent to the right of the broker to demand compensation, if the principal and the customer found by the broker enter into a valid contract of sale, and the broker acts in good faith, the latter is not deprived of his right to a commission by the fact that the customer fails to carry out the contract. (p. 212.)

4. SAME.

Having performed his contract, a broker can not be deprived of his commission, though for some reason not involving culpability on his part, but due to the misrepresentation of the seller, the contract of sale fails of execution.  (p. 213.)

Appeal from Circuit Court, Upshur County.

Bill by Edmund Hugill and others against E. F. Weekley and others.   Decree for plaintiffs, and defendants appeal.

*Affirmed.*

C. C. HIGGINBOTHAM and G. M. FLEMING, for appellants.

U. G. YOUNG, for appellees.

MILLER, JUDGE:

The decree complained of involved an action of *assumpsit* brought by plaintiffs as real estate brokers against the defendants, their principals, to recover commissions for sale of a tract of land of 1,000 acres in Upshur county and the lumbering plant thereon.   By agreement of the parties this action was referred to a commissioner, to whom the chancery cause of the defendant Weekley against his copartner Giffin to wind up the partnership business had also been referred.   The commissioner in a brief report, found that the contract of plaintiffs with defendants was without consideration and therefore void, and that said action should be dismissed, to which report the plaintiffs excepted.   Upon final decree, February 18, 1907, in the chancery cause, this exception was sustained, and among the sums decreed against said firm in favor of other creditors $1,894.38 was decreed in favor of plaintiffs, being 5% commission on $35,000, the contract price at which they claimed to have sold defendants' property, with interest, from which decree defendants have appealed.

The plaintiffs' contract of employment is in writing, and therefore there is no controversy as to its terms.   It recites a money consideration of one dollar; clothes plaintiffs "with full and complete authority to negotiate and sell" said property; provides that they "are to make all the effort possible to make sale" thereof, "for which they are to receive 5% commission for their services *out of the first payment.*" It also provided that they were to offer the property for the sum of $45,000, but in the event it should be sold for a less

sum they should receive commission only on the price at which the owners and purchasers might agree upon. It is admitted by the defendants that the plaintiffs, pursuant to this authority, produced to them as a purchaser J. W. Mc-Cullough, to whom by contract in writing they made sale of the property at the price of $35,000, in consideration of which sum they agreed to make him a deed at once, the sale ''to be based on the actual condition of the property'' as of the date of the contract, August 14, 1905, and from that date nothing was to be removed from the property without the consent of the purchaser, he agreeing on his part to pay the purchase money on or before August 22, 1905, but, should the title not be perfected by that date, the time of payment to be extended until the same should be perfected.

So far the case presents no controverted question of fact. The plaintiffs claim that immediately on the execution of the contract of sale the purchaser was put in full possession of the property and continued to operate the same, through a superintendent employed by him, for some days, but about the day of payment he refused to carry out the contract except on condition of the abatement of $10,000 of the purchase money for alleged misrepresentation by the defendants regarding the timber on the land, which abatement the defendants declined to make; whereupon the defendants, after tendering a deed, entered suit against McCullough for specific execution or recovery of the purchase price, afterwards abandoned by them, for what reason the record does not distinctly show. Weekley says, in his evidence, that on his trip to Friendsville, Md., where McCullough lived, he did not find anything there out of which they could make their money. There is evidence, however, tending to show McCullough's solvency and that he was financially responsible for his contract. That he did take possession of the property, at least in a tentative way, is not denied by the defendants; but, whatever the fact may be about his possession, as we view the case the question is not material.

We may inquire then, when, under a contract of employment like the one involved here, may a broker be said to have performed it on his part so as to entitle him to his compensation? The contract, as we have seen, provided that the plaintiffs were ''to make all the effort possible to make sale

of the property, for which they are to receive 5% commission." We may assume that this contract implied, if it did not expressly require, a sale as a condition of payment of commission. There can be no question, however, that the plaintiffs fully performed their contract in this particular. A purchaser was actually procured and a sale actually made. The universal rule is that, unless limited by express provisions of the contract, a broker is entitled to his compensation when he has done all his contract required of him. 4 Am. & Eng. Enc. 972, and cases cited; *Reynolds* v. *Tompkins*, 23 W. Va. 229; *Ober* v. *Stephens*, 54 W. Va. 354; *Parker* v. *Association*, 55 W. Va. 134; 19 Cyc. 255, 270, and cases cited. In many cases the contract of the broker is to furnish a purchaser ready and willing to purchase on the terms proposed. When this has been done, his contract is complete, and he is entitled to his commission, whether a sale is actually effected or not. 4 Am. & Eng. Enc. 972; *Parker* v. *Association, supra*. We have assumed that the contract in the case at bar required plaintiffs to actually bring about a sale as a condition precedent to the right to demand compensation. In such a case, "if the principal and the customer found by the broker enter into a valid contract, and the broker acts in good faith, the broker is not deprived of his right to a commission by the fact that the customer fails to carry out the contract." 19 Cyc. 270, and many cases cited in notes.

The suggestion, in the evidence of Weekley, of want of pecuniary responsibility of the purchaser will not avail defendants. The authorities hold that, if the principal actually enters into a contract with the purchaser furnished by the broker, the commission is due, although the purchaser proves financially irresponsible. 19 Cyc. 271 and cases cited. We do not understand, however, that this point is seriously relied on here.

The points which are relied on by appellants are based on the refusal of McCullough to complete his contract because of the alleged misrepresentation of M. E. Rexroad, an employee of appellants sent by them with McCullough at his request to show him the land and the timber thereon, to the effect that about 400 acres of said land had not been cut over. McCullough went on the land to examine the timber for himself. It is not pretended that Rexroad had any

authority except, at McCullough's request, to show him the boundaries of the tract, that he might see and know for himself to what extent the timber had been taken. Rexroad admits that, while on the land with McCullough he did make some such representation respecting the timber. If this was binding on the defendants, it does not appear that McCullough relied thereon, except that he assigned it as a reason for not completing the contract. He is not a party to the suit, and his deposition was not taken. Nor does it appear that at the time of the sale the appellants had knowledge of such misrepresentation of Rexroad. It is very doubtful, therefore, whether such representation by an unauthorized agent, with opportunity to the purchaser to see and examine the land for himself, and while actually engaged in doing so, would relieve him from his contract upon any rule or principle applicable in such cases. But this question is collateral to the issues here, and not presented for our decision.

The points referred to are, first, that, the appellants never having received any of the purchase money, out of the first payment of which the contract provided the plaintiffs were to be paid commissions, the plaintiffs can not recover the same; second, that, because of the alleged misrepresentation, the sale was void, for, such representation being of a very material fact, the minds of the parties never met on the subject matter of the contract, and hence the plaintiffs are not entitled to commissions.

We can not accede to the first proposition. The authorities already cited do not limit the right of recovery in that way. The contract here is not susceptible of any such forced and inequitable construction. Having performed their contract, if for any reason not involving culpability on their part, but due to the misrepresentation of the seller, the contract of sale fails of execution, the plaintiff can not be deprived of compensation. 19 Cyc. 271, and cases cited in note 88; *Parker* v. *Association, supra; Glentworth* v. *Luther,* 21 Barb. 145; *Shepherd* v. *Cohu,* 5 N. Y. Supp. 187; *Middleton* v. *Thompson,* 163 Pa. 112. The cases of *Crockett* v. *Grayson,* 98 Va. 354, and *Murray* v. *Richard,* 103 Va. 132, cited by counsel, are not opposed to these authorities. The latter is predicated on the former, and each is turned on the fact

that in the contract of sale a right was reserved by which it was subsequently defeated. The first holds distinctly, on a number of state and federal cases, that when a broker has found "a purchaser who has entered into a valid contract his right to compensation can not be defeated by the default of the seller, by his misrepresentation, or by his whimsical or unreasonable refusal to comply with his contract."

The second proposition involves also the same principles applicable to the first; but, in addition, it is insisted that, because of the alleged misrepresentation as to the timber, the minds of the contracting parties never met, and hence the contract was wholly invalid, with the same result to the plaintiffs' rights as if no contract had in fact been entered into. We can not accede to this proposition. There was no mutual mistake as to the subject matter of the contract. The parties did meet thereon. There was no question about the identity of the property sold, nothing to affect it except the apparently innocent mistake of Rexroad in relation to the timber. Whatever the rights of the purchaser, the contract was binding on the defendants, who might, if bound by Rexroad's representation, be compelled to suffer an abatement of purchase money. In case of a mistaken identity of the property sold, neither party would be bound by the contract. A court of equity would relieve both or either. Then the minds of the parties would be said not to have met on the subject of the contract. But such is not the result of the present contract. It is attempted, however, to apply this doctrine in the case at bar, and we are cited, among other authorities, to *Baxter* v. *Tanner*, 35 W. Va. 60; *Silliman* v. *Gillespie*, 48 W. Va. 374; and *Lumber & Veneer Co.* v. *Wilson*, 51 W. Va. 30;—all cases of mistaken identity of land, and of little or no application to the present case.

Upon principle and authority, therefore, we think the decree should be affirmed.

*Affirmed.*