Beattie-Firth, Inc.

*v.*

Harry G. Colebank, *et al.*

(No. 10962)

Submitted September 10, 1958. Decided September 30, 1958.

*Spilman, Thomas, Battle & Klostermeyer, Frederick H. Klostermeyer, Frederick L. Thomas,* for plaintiff in error.

*Mahan, White, Higgins & Graney, Stanley Higgins, Jr.,* for defendants in error.

DONLEY, JUDGE:

This is an action of assumpsit brought by Beattie-Firth, Inc., against Harry G. Colebank and Ruth F. Colebank, to recover damages for the alleged breach of a contract. The defendants refused to pay to the plaintiff a commission upon the sale of real estate owned by the defendants, the contract for the sale of which was procured through the plaintiff as broker. The circuit court sustained the defendants' demurrer to the plaintiff's declaration, and, the plaintiff declining to amend it, entered an order dismissing the action.

The allegations of the declaration are to the effect that on July 7, 1956, the defendants owned certain real estate in the City of Charleston, and engaged the plaintiff to find a purchaser for it at the price of $29,500.00, and on that date the parties entered into a written agreement, which provided as follows:

> "Seller agrees to pay Broker a commission of 5 per cent of the gross sale price of any sale or

exchange of said property during the life of this contract whether made by Broker or not, Seller further agrees to pay the same Commission on any sale or exchange of said property, made by seller or by any agent for seller other than another member of the Charleston Board of Realtors, made within six months after the termination hereof, directly or indirectly to any person with whom Broker had negotiations, or whose attention was brought to said property by Broker. In the event Broker arrange a sale thereof in accordance herewith *and said sale is not consummated by reason of any default of Seller,* including Seller's failure or inability to make conveyance or convey good and marketable fee simple title, Seller agrees to pay Broker for his services a sum equal to such commission had the sale been consummated . . . " (Italics supplied.)

Pursuant to this agreement, the plaintiff procured one Carl D. Anderson, as a purchaser, and on August 20, 1956, a contract for the sale of the real estate was entered into between the defendants, as sellers, and Carl D. Anderson, as purchaser. Under the terms of this contract Anderson agreed to pay $28,000.00 for the property, payable $500.00 cash in hand, and the balance to be paid as follows: ". . . all cash at time of closing and upon delivery of proper deed. Purchaser will obtain a mortgage loan of $18,000. on subject property and will pay $9,500. in cash at closing time."

Other provisions of the contract, which are not here material, were followed by paragraphs (8) and (9), which provide that:

"(8) Seller and Purchaser recognize Beattie-Firth, Inc., as the Broker who made this sale. *If this sale be consummated, or if it be not consummated by reason of any default of Seller,* including Seller's failure or inability to make conveyance or convey good and marketable title in accordance with the terms hereof, Seller agrees to pay a commission of five per cent (5%) of the gross sale price above set out to Broker as his commission on this sale. If Purchaser fails or re-

fuses to perform this contract for any reason other than the failure or inability of **Seller to make** conveyance, or convey good and marketable title in accordance with the terms thereof, so much of any payments made by the Purchaser as equals said commission shall be retained as his own by the Broker as said commission, and the balance returned to the Purchaser; provided, however, that such retention and return of said payments by Broker shall in no way affect or impair the remedies of Seller at law or equity for any breach of this contract by Purchaser. (Italics supplied.)

"(9) Broker incurs no liability by reason of seller's failure or refusal to sign this contract, or by reason of the failure or refusal of Seller or Purchaser to perform this contract. *Broker joins in the execution hereof to evidence his agreement to the provisions hereof affecting Broker's compensation.*" (Italics supplied.)

This contract was signed by the defendants, by the plaintiff, and by Carl D. Anderson.

Upon the execution of the contract, Anderson deposited with the plaintiff, as agent for the defendants, the sum of $500.00, which plaintiff deposited in its bank in a so-called "trust account", where the same still remains.

By mutual agreement of the parties the date for the closing of the purchase was extended to March 15, 1957, but upon that date Anderson informed the plaintiff and the defendants that he did not propose to purchase the property in compliance with his contract of August 20, 1956, as extended, because he had decided not to move to Charleston. The defendants acquiesced in this repudiation of the contract, and failed and refused to take any action to enforce it against Anderson.

The plaintiff now claims that it is entitled to recover the sum of $1,400.00, together with interest thereon, being five per cent of the contract price of $28,000.00.

Ordinarily, when a broker has fully performed his contract of agency to sell property, he cannot be deprived of

his commission by the failure of his principal to enforce a valid contract against a solvent purchaser of the property, so as to bring about the contingency on which the broker's compensation was made to depend. *Dillon* v. *Turkey Gap Coal & Coke Co.*, 89 W. Va. 395, 109 S. E. 334.

However, this general rule has no application where the express terms of the contract otherwise provide. *Linton* v. *Johnson,* 81 W. Va. 569, 94 S. E. 945; *Hugill* v. *Weekley,* 64 W. Va. 210, 61 S. E. 360.

There is no conflict between the provisions of the preliminary contract entered into by the plaintiff and the defendants, and those of the sale contract in which the plaintiff joined "to evidence his agreement to the provisions hereof affecting Broker's compensation," and, if there were, the latest expression of the intention of the parties controls.

It is therefore necessary to examine the terms of the contract in the present case to ascertain whether or not there is a condition precedent which must be performed before the broker is entitled to receive his compensation. Express conditions precedent have been known to the law for centuries. If one promises another to pay if a ship sailed with the next wind, the promisee must allege and prove that the ship went with the next wind. *Constable* v. *Cloberie,* (K. B. 1626) Palmer 397. If a promisor agrees to provide a cargo for a ship provided that she arrive by the twenty-fifth of June, the arrival of the ship by that date is a condition precedent. *Shadforth* v. *Higgin* (1813), 3 Camp. 385. No particular form of words is necessary in order to create an express condition, and words such as "provided that", or "if", qualifying a promise, are perhaps the most commonly used expressions to indicate that the duty of the promisor is expressly conditional. 1 Restatement, Contracts, Section 258.

The provisions of paragraph (8) of the contract entered into between the three parties, hereinbefore quoted, plainly create such a condition. This is made apparent

by a transposition of the words which makes their meaning quite clear. The substance of the contract is this: "Seller agrees to pay a commission of five per cent of the gross sale price above set out to broker as his commission on this sale, if this sale be consummated, or if it be not consummated by reason of any default of the seller . . . ." It thus appears that the promise to pay the five per cent commission was expressly conditioned upon the occurrence of one of the two alternative events: (1) Consummation of the sale; or (2) non-consummation of the sale by reason of any default of the seller. Neither of these conditions has occurred, and the duty of the defendants to perform their promise did not, therefore, arise.

It is contended by the plaintiff that the defendants were under the duty to institute a suit against Anderson for specific performance of the contract in order to bring about the contingency upon the occurrence of which the commission was payable. We know of no authority in this jurisdiction which goes so far, and we would hesitate to enunciate a rule which would require a vendor whose promise is so conditioned to engage in expensive and perhaps fruitless litigation in order that a broker might become entitled to a commission. A burden so onerous cannot be imposed by implication. The failure of a condition to occur, even though the condition is some performance by a party to the contract, is not a breach of contractual duty by him unless he has made an enforceable promise that the condition exists or shall occur; and whether he has done so is a question of interpretation. 1 Restatement, Contracts, Section 251. And, we think, it is clear in the present case that the defendants made no promise, express or implied, that the condition of consummation of the sale should occur. Especially is this true where, as here, the nature of the condition is such that it cannot be performed by the vendor alone. He cannot force the vendee to accept a deed in consummation of the contract of sale; nor, indeed, is he required to part with it until he receives the agreed consideration therefor. Nothing to the contrary was held in *Dillon* v. *Turkey Gap Coal & Coke Co.*, 89

W. Va. 395, 109 S. E. 334; nor in *McDermott* v. *Fairmont Gas & Light Co.*, 88 W. Va. 692, 108 S. E. 264. In each of those cases there was no provision in the brokerage contract relating to consummation of the sale, and it further appeared in each of those cases that the sale had actually been consummated by the delivery of the subject matter to the buyer. In contracts such as that which we now have under examination, the words "consummation" or "sale be consummated" mean the delivery of a deed of conveyance from the vendor to the vendee. *Walker Realty Co.* v. *Cart Land Co.*, 96 W. Va. 18, 123 S. E. 423; *Dowler* v. *Improvement Co.*, 110 W. Va. 113, 157 S. E. 91; *Amies* v. *Wesnofske*, 255 N. Y. 156, 174 N. E. 436; Ann. 73 A. L. R. page 930; 4 Williston on Contracts, Rev. Ed., 1030A, page 2878, footnote 4; "Special Conditions in Real Estate Brokerage Contracts", 32 Columbia Law Rev. 1194. In 31 Columbia Law Review 701-702, the authorities are collected and it is stated that:

> "But the majority of jurisdictions impose upon the vendor no duty of compelling the purchaser to perform, and hence default by the purchaser, whether followed by mere non-action on the part of the vendor, or a release by him of the purchaser, defeats the broker's claim for commissions . . . . The intention of the parties in inserting a clause providing for payment of the balance of commissions 'on the closing of title' is probably to throw the risk of the purchaser's default on the broker. A contrary result would compel the vendor to undergo the delays and uncertainties of prolonged litigation in order to avoid the payment of commissions. This would defeat the very purpose of such allocation of risk."

Although what we have said disposes of the case, if any fortification of our views is necessary, it may be found in the further provisions of the contract between the parties in paragraph (8) of the contract, which provides, as above quoted, that if the purchaser fails or refuses to perform the contract for any reason other than the failure or inability of the seller to make conveyance or convey good

and marketable title in accordance with the terms thereof, "so much of any payments made by the Purchaser as equals said commission shall be retained as his own by the Broker as said commission, and the balance returned to the Purchaser; . . . ."

There would seem to be no purpose in this provision, except to protect the broker upon the failure to consummate the sale because of the default of the purchaser; and it gives rise to a strong implication, at least, that in such event the broker's compensation is to be limited to the down payment or earnest money received by him from the purchaser. Such a position has been upheld by other Courts in construing similar, if not identical, contracts. *Green* v. *Snodgrass,* 79 Ariz. 319, 289 P. 2d 191; *Kline* v. *Johnson,* (Cal. App.) 263 P. 2d 494.

In any event, if it had been the intention of the parties that the defendants should pay the plaintiff the full commission, even though the failure to consummate the sale was solely because of the default of the purchaser, it would have been a simple matter to say so in plain language. If the broker failed to guard his interests, the court is not at liberty to rewrite the contract. As stated by Learned Hand, C. J., in *Baird* v. *Gimbel Bros., Inc.,* 64 F. 2d 344 (C. C. A. N. Y.): ". . . in commercial transactions it does not in the end promote justice to seek strained interpretations in aid of those who do not protect themselves."

The order of the Circuit Court of Kanawha County sustaining the demurrer to the declaration is affirmed.

*Affirmed.*