Myron McINTOSH, d/b/a Myron McIntosh Agency, Plaintiff-Appellant,

v.

James C. FRISINGER et al., Defendants-Respondents.

No. 9539.

Missouri Court of Appeals, Springfield District.

March 12, 1974.

L. Thomas Elliston, Myer, Webster, Perry & Elliston, Webb City, for plaintiff-appellant.

Nolen Berry, Neosho, for defendant-respondent, Pat Begey.

PAUL E. CARVER, Special Judge.

This is an appeal from a court-tried case in which Myron McIntosh, a real estate broker doing business as Myron McIntosh Agency, appeals from an adverse judgment.

McIntosh filed his amended petition in three counts. In count I he claims he has in his possession $3,000 which he holds as an escrow agent, and which the defendants James C. Frisinger and Barbara Frisinger are demanding. He further alleges the defendants Frank Begey and Pat Begey are entitled to the $3,000 as a result of a forfeiture of a real estate contract by the Frisingers, and that he is entitled to $1,500 of the money held by him in accordance with his listing contract. In count II he states that Frank Begey and Pat Begey, his wife, entered into a listing contract with him to sell 20 acres of land in Newton County, Missouri; that he found buyers, namely James C. and Barbara Frisinger, "who were ready, willing, and able to purchase the land"; and that the Begeys refused to pay him his commission of $900. In count III he complains of a conspiracy between the Begeys and Frisingers to deprive him of $900; that the conspiracy was "unlawfully and wantonly" made and that he is entitled to $1,500; and prays that he recover $900 from both the Begeys and Frisingers as punitive damages.

Pat Begey filed her answer to plaintiff's petition. Frank Begey was deceased. The action was continued against Pat Begey after the death of her husband. As to count I, she admitted the execution of the listing contract and the contract of sale, the deposit of $100 as earnest money with plaintiff by the Frisingers. She further stated that the Frisingers refused to com-

plete the sale and that she claimed no interest in the $3,000, except $50, one-half of the $100 earnest money deposited with plaintiff. She requested the money held by plaintiff be paid as follows: 1) the sum of $2,900 to James C. and Barbara Frisinger; 2) the sum of $50 to plaintiff; and 3) the sum of $50 to her in accordance with the provisions of the listing contract regarding forfeiture of the earnest money. As to count II, she denied that plaintiff produced "a buyer ready, willing, and able" to purchase the property. She denied generally all of count III of plaintiff's amended petition.

Defendants Frisinger also filed answer to plaintiff's amended petition. As to count I, they admitted that the plaintiff is entitled to $50 of the funds and that the defendants Frank Begey and Pat Begey were entitled to $50 of the funds and that they were entitled to $2,900. As to counts II and III, defendants Frisinger generally denied the allegations therein, and, by way of affirmative relief, filed their counterclaim against plaintiff, which is as follows:

"Now comes [sic] the Defendants, James C. Frisinger and Barbara Frisinger and for cause of action state as follows:

"1. Defendants state that on May 8, 1972 the Plaintiff, as a real estate broker, sold for the Defendants a tract of real estate to Charles Zarbano and Phyllis Jean Zarbano for the total sum of $18,250.00 and that after all the expenses were paid including a commission to the Plaintiff and including the payment of a FHA Loan these Defendants were entitled to a balance of $5,569.28. That the Plaintiff has paid to the Defendants the sum of $2,669.-58 leaving a balance due to said Defendants in the sum of $2,900.00. That the Defendants have made demand upon the Plaintiff for the sum of $2,900.00 but that the Plaintiff has refused to pay said amount to these Defendants and has converted this amount of money to Plaintiff's own use.

"That the Plaintiff received the $2,900.-00 as a trustee or fiduciary and in a trust capacity and has willfully and intentionally and maliciously kept the Defendants from receiving the sum of $2,900.00 and all to the damage of the Defendants in interest at the rate of $15.00 per month and that said Defendants are entitled to punitive damages in the sum of $2,500.00.

"WHEREFORE, [Defendants pray] judgment as against the Plaintiff for the sum of $2,900.00 as money actually owed and interest at the rate of $15.00 per month from the date of the filing of this action and punitive damages in the sum of $2,500.00."

The evidence discloses that on February 2, 1972, Pat Begey and her husband contacted plaintiff concerning the sale of their property located near Seneca in Newton County, Missouri. After discussion with plaintiff, they listed the property with him to sell. An exclusive and special printed listing agreement was prepared by plaintiff listing the property for sale and was signed by the Begeys. The listing agreement was accepted by "Moore" on behalf of Myron McIntosh Agency. There is no dispute concerning the preparation by plaintiff of the listing contract, set forth below, or its execution by the Begeys.

"2/2 1972

"To MYRON McINTOSH AGENCY, Joplin, Missouri

"In consideration of your listing and endeavoring to sell the property described on the reverse side hereof, I hereby grant to you the sole and exclusive right to sell the same and I hereby relinquish my right to sell said property. Should said property be sold or exchanged or a purchaser be found therefor by you, or by myself or by any other person, at the price and upon the terms specified on the reverse side hereof, or at any price or terms which I may authorize or accept, I agree to pay you 6% percent of the sale price, payable at the of-

fice of Myron McIntosh Agency in Joplin, Missouri, and I will promptly execute to purchaser and deliver to you for delivery to purchaser, a warranty deed of said property with a complete abstract showing good and merchantable title to date of transfer, or enter into contract for deed on the 'Real Estate Contract for Deed' form of the Myron McIntosh Agency.

"Should other property be accepted by me in exchange, I hereby consent to your representing and accepting compensation from all parties to the transaction.

"I agree that you and your clients shall have access to the property at all reasonable times to show the same, and I will give all reasonable assistance in making a sale of said property.

"I agree that out of any forfeited earnest money one-half shall go to the Myron McIntosh Agency.

"You are authorized to place your sale sign on the property.

"This contract shall terminate on the 2 day of May, 1972, except that if the property, within ninety (90) days after such termination date, shall be sold to any person to whom you or anyone in your behalf has shown said property, I will pay to you the commission above specified.

Accepted _____ 19 ____

Myron McIntosh Agency

By /s/ Moore

X /s/ Frank Begey
              Owner

X /s/ Pat Begey
          Husband or Wife"

---

Thereafter, on April 5, 1972, through plaintiff's efforts the Begeys entered into a real estate contract with the Frisingers, providing for the Frisingers to buy the Begey land. This contract was "voided" because of the inability of the Frisingers to raise the earnest money.

The Frisingers also had land listed with plaintiff for sale but the proposed purchaser, hereinafter referred to as Zarbano, could not at that time raise the necessary money to carry out the purchase agreement.

On April 7, 1972, the Begeys entered into a new real estate contract with the Frisingers designating the purchase price at $15,000 and an earnest money deposit was required in the sum of $100. The form contract was prepared by plaintiff in his office. It provided for a purchase price of $15,000 and is set forth in part as follows:

". . . FIFTEEN THOUSAND AND NO/100 ($15,000.00) DOLLARS, to be paid by the buyer as follows: $100.00 at the time of the execution and delivery of this agreement, the receipt of which is hereby acknowledged by the seller and which is deposited with MYRON McINTOSH AGENCY, the agent, as earnest money and as part of the purchase price and the balance thereof is to be paid in the following manner, to-wit: $2,900.00 cash on delivery of deed as herein provided: the balance of the purchase, $12,000 shall be paid by the buyers and sellers executing a Contract for Deed on the remaining amount of $12,000, payable at $95 per month, including interest at the rate of 7¼% per annum.

"It is further agreed by all parties hereto that the above Contract for Deed shall be on a three year time period basis, at which time the property shall be refinanced, Contract for Deed paid in full, and Warranty Deed issued and delivered.

"The sale under this contract shall be closed under the GENERAL SALES CONDITIONS AND CLOSING PRACTISES as set forth on the reverse side hereof and hereby made a part of this contract, and subject to any SPECIAL AGREEMENTS between buyer and seller, also set forth on the reverse side hereof (if any) and hereby made a part of this contract, at the office of MYRON McINTOSH AGENCY.

"The seller shall pay the agent 6% for commission at the time of the closing of this sale.

"IN WITNESS WHEREOF, Said parties hereto subscribe their names.

EXECUTED IN TRIPLICATE.
NOTE: Buyers should employ a licensed attorney to examine title to said real property.

Sellers

/s/ Frank Begey
    FRANK BEGEY
/s/ Pat Begey
    PAT BEGEY
/s/ James C. Frisinger
    JAMES C. FRISINGER

/s/ Barbara Frisinger
    BARBARA FRISINGER

MYRON McINTOSH
Real Estate Agency
  Personalized Service
PHONE MAYFAIR 3–5480
2915 MAIN ST.
JOPLIN, MO."

Buyers

---

On the back of the contract of sale and referred to as "General Closing Conditions and Sales Practises" the following conditions were stated:

". . . It is understood and agreed that time is the essence of this agreement and if the seller has kept seller's part of this agreement by furnishing good and sufficient title as herein provided, and the buyer fails to comply with the requirements of this agreement within ten (10) days thereafter, then the money deposited as aforesaid shall be forfeited by the buyer, as liquidated damages, and this agreement may or may not be thereafter operative, at the option of the seller. If the aforesaid money deposited is forfeited by the buyer, then it shall be divided equally between the seller and the said named agent for the seller. . . ."

On or about May 12, 1972, plaintiff received notice from the Begeys that they were willing to perform the contract dated April 7, 1972, but that the Frisingers were unwilling to complete the sale. As a result of this information, the contract was not completed by the respective parties.

On May 14, 1972, the defendants Begey and Frisinger entered into a written lease. The lease provided as follows:

"This agreement made and entered into by and between Frank Begey and Pat Begey, Seneca, Missouri parties of the first part and hereinafter called Lessors and James C. Frisinger and Barbara Frisinger, Joplin, Missouri parties of the second part and hereinafter called Lessees.

"Witnesseth:

"Lessors agree to lease to the Lessees the following described real estate remaining in Newton County, Missouri according to the terms of this agreement.

South Half of the Northwest Quarter of the Northwest Quarter of Section 24,

Township 25, Range 34, in Newton County, Missouri

"The period of this lease shall be for three years commencing on the date of the execution of this agreement and the lease rent shall be $1,000.00 per year, payable in advance, and the receipt of $3,000.00 is acknowledged by Lessors.

"Possession shall be given on the date of the signing of this lease agreement.

"During the lease period Lessors shall pay the taxes and insurance, however, Lessees shall pay their own insurance on any property belonging to them.

"In case of distruction [sic] of the home by fire or act of God during the lease period and if such is sever [sic] enough to prevent living in the house then the Lessees at their option may cancel the lease and be refunded lease rent for the unused portion of the rent paid.

"Lessees shall not neglect or damage the improvements or fences during the lease period and may have the right to farm the land or run cattle.

"This agreement shall bind the heirs, executors, administrators and assigns of all parties.

"In case Lessors desire to sell during the lease period then the Lessors shall give the Lessees first refusal to buy if the parties can agree upon a purchase price.

"Signed in duplicate this 14 day of May, 1972.

/s/  Frank Begey
       Frank Begey—Lessor

/s/  Pat Begey
       Pat Begey—Lessor

/s/  James C. Frisinger
       James C. Frisinger—Lessee

/s/  Barbara Frisinger
       Barbara Frisinger—Lessee"

On May 8, 1972, the plaintiff, as a real estate broker, sold for the defendants Frisinger a tract of land owned by them to Charles Zarbano and Phyllis Jean Zarbano for the total sum of $18,250; and after all the expenses were paid, including a commission to the plaintiff, and including the payment of an FHA loan, the Frisingers were entitled to a balance of $5,569.28. The plaintiff paid to the defendants Frisinger the sum of $2,669.58, leaving a balance due to them of $2,900. Demand was made on plaintiff for the $2,900, which he refused to meet.

Suit was instituted in the Circuit Court of Jasper County at Joplin on May 18, 1972. Plaintiff filed his amended petition and was permitted on some date thereafter, the record not being clear, to deposit the $100 earnest money under the Begey and Frisinger real estate contract and the $2,900 purchase money due the Frisingers on the Zarbano land sale.

On March 29, 1973, this case was tried without a jury before the court. On March 29, 1973, the court entered judgment as follows:

" . . . [O]n Count I of plaintiff's petition in favor of the defendants James C. Frisinger and Barbara Frisinger that said defendants are entitled to $2,900 of the $3,000 that the Plaintiff held in trust at the time of the filing of the petition herein and now on deposit with the Clerk of this Court, together with interest from May 8, 1972 in the sum of $154.87, making a total sum due of $3,054.87. The Court finds the issues on Count II and III of Plaintiff's petition in favor of Defendants and against the Plaintiff. The Court further finds the issues on the Defendants James C. Frisinger and Barbara Frisinger's Counter-claim in favor of the Plaintiff and against the said defendants.

"The Court finds the Defendant Pat Begey is entitled to the sum of $50.00 from the aforesaid funds and that the Plaintiff

is entitled to retain the sum of $50.00 from the aforesaid funds. . . . "

Costs were assessed against the plaintiff. The Clerk of the Circuit Court of Jasper County, Missouri, was ordered to pay the above mentioned sums of money to the respective parties out of the funds deposited. None of the parties requested a written opinion, findings of fact, or conclusions of law.

From the adverse judgment of the trial court plaintiff filed his motion for a new trial, alleging:

" . . . Plaintiff is entitled to judgment against Defendant Pat Begey as a matter of law. . . . That upon the law and the evidence, the judgment of the Court should have been for the Plaintiff. That the judgment of the Court is contrary to the law under the evidence. That the judgment of the Court is contrary to the evidence."

The allegations of error by appellant in his motion for a new trial and his brief are certainly not models for the bar to follow; nor are they of sufficient merit to require an appellate court to search for claimed errors in a court-tried case. Ward v. Johnson, 480 S.W.2d 104, 106 [2, 3, 4] (Mo.App.1972); Schneider v. Southwestern Bell Tel. Co., 413 S.W.2d 16, 19 [2, 3] (Mo.App.1967). This court has looked with disfavor on such allegations and, as noted in Safe-Buy Real Estate Agency, Inc. v. Hemphill, 498 S.W.2d 599, 601 [4] (Mo.App.1973), this court is not required or duty bound to " 'seine through the entire brief in an effort to ascertain the points' " on which appellant relies. We shall, however, determine this case on its merits, although we should summarily deny plaintiff's appeal.

Both the Begeys and the plaintiff agree that a binding listing contract was entered into when the Begeys asked plaintiff to sell their land. The parties disagree on the compensation. The Begeys claim that plaintiff did not produce a buyer ready, willing, and able to purchase and that he is not entitled to a 6% commission. They admit that plaintiff is entitled to one-half of the forfeited earnest money as provided by the listing contract. On the other hand, plaintiff claims that his right to the $900, or 6% commission, arose when the Begeys signed a real estate contract with the Frisingers, whether or not he had procured a purchaser who was ready, willing and able to buy. Plaintiff also claims the sum of $1,500 of the $3,000 he deposited in court in that he is entitled to one-half of any earnest money forfeited.

◼◼◼ The question of when and how a broker becomes entitled to a commission depends upon his contract. Spitcaufsky v. Guignon, 321 S.W.2d 481, 487 [1–3] (Mo. 1959). Parties may by contract condition their liability for payment of a broker's commission upon prescribed events or contingencies, Tant v. Gee, 348 Mo. 633, 638, 154 S.W.2d 745, 747 [3] (1941); Alcorn v. Moore, 386 S.W.2d 907, 911 [2, 3] (Mo. App.1965); Staples v. O'Reilly, 288 S.W. 2d 670, 676 [9–11] (Mo.App.1956),[1] and for division of the earnest money in case of forfeiture because of the default of the purchaser. Such agreements are valid and binding upon the parties, and the broker is entitled to the amount agreed upon in the listing contract. Huber v. Gershman, 300 S.W.2d 501, 504–505 [2, 3] (Mo.1957); Turner v. Pounds, 43 S.W.2d 1104, 1107 [1, 2] (Tex.Civ.App.1931); Haynes v. John Davis & Co., 22 Wash.2d 474, 156 P. 2d 659, 663 [4] (1945).

It is therefore necessary that we examine the terms of the listing contract to determine whether or not there are provisions for compensation, and in particular any special conditions concerning payment of money forfeited where the buyer refuses to complete the transaction. Agranoff

1. Wehner v. Schrader, 119 Colo. 518, 205 P.2d 225, 228 [1], 9 A.L.R.2d 489, 493 [3] (1949); Annot., 9 A.L.R.2d 495, 497 § 4 (1950).

v. Jay, 9 Wash.App. 429, 512 P.2d 1132, 1136 [5] (1973).

Plaintiff's listing contract provides as follows:

"In consideration of your listing and endeavoring to sell the property described on the reverse side hereof, I hereby grant to you the sole and exclusive right to sell the same and I hereby relinquish my right to sell said property. Should said property be sold or exchanged or a purchaser be found therefor by you, or by myself or by any other person, at the price and upon the terms specified on the reverse side hereof, or at any price or terms which I may authorize or accept, I agree to pay you 6% percent of the sale price, payable at the office of Myron McIntosh Agency in Joplin, Missouri, and I will promptly execute to purchaser and deliver to you for delivery to purchaser, a warranty deed of said property with a complete abstract showing good and merchantable title to date of transfer, or enter into contract for deed on the 'Real Estate Contract for Deed' form of the Myron McIntosh Agency.

    *    *    *    *    *    *

"I agree that out of any forfeited earnest money one-half shall go to the Myron McIntosh Agency. . . ."

■ It thus appears that the promise to pay the 6% commission was conditioned upon the occurrence of one of the two alternative events: 1) consummation of the sale, or 2) nonconsummation of the sale by reason of the default of the seller. Neither of these conditions occurred, and the duty of the defendants Begey to perform their contract to pay did not therefore arise. As the plaintiff did not sell the real estate, he is not entitled to the 6% commission. Plaintiff is entitled to one-half of the earnest money deposited by the Frisingers with the plaintiff, the deposit being in

the sum of $100; therefore, upon a forfeiture plaintiff is entitled to the sum of $50.

In count III of plaintiff's amended petition he claims damages from the Begeys and the Frisingers because they "entered into conspiracy to deprive plaintiff of moneys due under Exhibit B due for damages in the amount of Nine Hundred Dollars ($900.00). That defendants and each of them by their actions did unlawfully and wantonly conspire to deprive plaintiff of moneys lawfully due . . . ."

■ Under certain conditions a seller may not by his conduct defeat a broker's right to a commission. If the owner is guilty of fraud or bad faith which prevents performance of the contract, the broker is entitled to his commission in accordance with the terms of listing contract. Wolcott v. Moser, 364 Mo. 443, 446, 262 S.W.2d 620, 621 [1] (banc 1953); Bowman v. Rahmoeller, 331 Mo. 868, 879 [6], 55 S.W. 2d 453, 458 [7] (1932).

■ The evidence does not support count III of plaintiff's amended petition. The Begeys did not renege on the contract; the purchaser refused to go through with the transaction and forfeited the earnest money deposited The leasing of the land does not alone convict the defendants Begey of fraud or bad faith, and the record otherwise discloses no bad faith or fraud on their part.

Plaintiff claims the trial court committed error in not following the law, stating: "It is clearly the law in this state that when sellers and buyers enter into a binding real estate contract, the broker has earned his commission, whether or not the sale is consummated." With this general statement we have no quarrel. However, this statement has no application where the express terms of a special listing contract and real estate contract provide otherwise.[2]

2. Tant v. Gee, 348 Mo. 633, 154 S.W.2d 745 (1941); Green v. Snodgrass, 79 Ariz. 319, 289 P.2d 191, 192–193 [1, 2] [3] (1955); Swanson v. Thurber, 132 Cal.App.2d 171, 281 P.2d 642, 649 [14] (1955); Kline v.

Johnson, 121 Cal.App.2d Supp. 851, 263 P.2d 494, 495–496 [1] (1953); Beattie-Firth, Inc. v. Colebank, 143 W.Va. 740, 105 S.E.2d 5, 9 [4], 74 A.L.R.2d 431, 435 [5] (1958); Annot., 74 A.L.R.2d 437, 468, § 14(b). (1960).

In count I of plaintiff's amended petition he alleges that he is holding $3,000 and asks the court to construe the agreement and declare him entitled to $1,500, the same being one-half of the earnest money.

The record discloses that the $3,000 which plaintiff holds is composed of two items: 1) the $100 deposited as earnest money, and 2) the $2,900 withheld by plaintiff from the Frisingers on the Zarbano land sale of May 8, 1972.

■ It is clear plaintiff had no right to withhold the $2,900 due the Frisingers and that he did so without legal right or claim. This money plaintiff held for the benefit of the Frisingers. If plaintiff were entitled to a commission, which we hold he was not, he should have looked to the Begeys for his compensation.

Plaintiff's assertion that he withheld the $2,900 from the Frisingers for the purpose of protecting them, saying, "I was protecting Mr. and Mrs. Frisinger . . . I would do it again. . . ." does not constitute a legal right to withhold the money.

The Frisingers demanded the $2,900 from plaintiff and he refused. On May 18, 1972, plaintiff filed suit but did not file his amended petition until October 26, 1972, wherein he requested the trial court to determine he was entitled to $1,500 of the money deposited, that being $600 more than the full commission he was entitled to. This contention convinces us that he conclusively knew of the earnest money forfeiture clause in his listing contract and that he sought to apply it to the $2,900 due the Frisingers from their Zarbano land transaction, along with the $100 earnest money deposited by them and paid to plaintiff on the Begey land transaction. With such knowledge he is in no position to say that he did not know the forfeiture provisions of his listing contract.

A careful consideration of the entire record convinces us that the capable trial judge was correct in his decision and that the judgment should be affirmed. However, this cause is remanded to the trial court with instructions to enter the following judgment:

(1) Judgment on count I in favor of James C. Frisinger and Barbara Frisinger in the sum of $2,900 and against plaintiff. That such judgment be paid out of the $2,900 deposited with the Clerk of the Circuit Court of Jasper County, Missouri, together with interest at the rate of 6% from May 8, 1972, to the date of payment. It is further ordered that if there is not sufficient money to satisfy the judgment and accrued interest at the time of distribution, then in that event judgment should be rendered against plaintiff in such sum that may be due in order to satisfy this judgment.

(2) Judgment in favor of Pat Begey in the sum of $50 to be paid out of the $50 deposited with the Circuit Clerk of Jasper County, Missouri.

(3) Judgment in favor of Myron McIntosh in the sum of $50 to be paid out of the $50 deposited with the Circuit Clerk of Jasper County, Missouri, after deducting therefrom all court costs assessed against him.

(4) That James Frisinger and Barbara Frisinger take nothing on their counterclaim, except as herein provided.

(5) The costs of this case are ordered taxed to and recovered from the plaintiff.

(6) That execution issue therefor.

It is so ordered.

All concur, except BILLINGS, J., who concurs in result only.