**J. Dale PERKINSON, Joan T. Perkinson, and Linclay Development Corporation, Plaintiffs-Respondents,**

v.

**Carolyn Skelly BURFORD, Defendant-Appellant,**

and

**Edward L. Bakewell, Inc., Counter-Claim Defendant-Respondent Cross-Claimant-Appellant.**

**Nos. 41514, 41515.**

Missouri Court of Appeals, Eastern District, Division Two.

Aug. 25, 1981.

**32**

Robert C. Jones, Clayton, David E. Horn, St. Louis, for defendant-appellant.

Harold Bamburg, Richmond Heights, David E. Horn, St. Louis, Meyer Kahn, St. Louis, Robert Jones, Clayton, for plaintiffs-respondents.

GUNN, Judge.

This appeal involves a breach of real estate contract and action for real estate commission. The plaintiffs-respondents (Perkinsons), as sellers of certain residential property, brought suit against the defendant-appellant (Mrs. Burford) as buyer for allegedly reneging on her agreement to purchase the property. A jury verdict was in favor of the Perkinsons for $74,193.40, from which Mrs. Burford appeals, raising three points of alleged trial court error: (1) failing to instruct that the Perkinsons did not have title to the property; (2) failing to instruct on the definition of fair market value of the property; (3) failing to order a defendant's directed verdict or judgment N.O.V.

In a corollary action, Edward L. Bakewell, Inc. (Bakewell) filed a counterclaim for recovery of a real estate commission, but a motion for directed verdict against it was sustained, which forms the basis of Bakewell's appeal.

We find no error and affirm the judgment.

With Bakewell as plaintiff's agent, the Perkinsons and Mrs. Burford entered into a standard sales contract for the purchase of a house with 16 acres of land in St. Louis County. The purchase price was to be $500,000.00, with Mrs. Burford making a $2500.00 earnest money deposit. The day before closing, Mrs. Burford repudiated the sale. The Perkinsons ultimately sold the property for $350,000.00 and brought suit against Mrs. Burford for damages resulting from the breach.

At the time the sales contract was executed, the Perkinsons possessed title to only two of the sixteen acres of land, the remaining fourteen acres being held in the name of Linclay Development Corporation (Linclay). Mr. Perkinson was president and sole stock holder of Linclay. On the date of closing Linclay, through proper corporate procedures, transferred title to its 14 acres to the Perkinsons.

For her first point Mrs. Burford argues that she was entitled to rescind the transaction upon finding that the Perkinsons did not own the entire 16 acres of land on date of the contract, but, rather, a substantial portion was owned by Linclay, a corporation with an allegedly unstable financial structure. She argues that the jury should have been instructed that she was entitled to rescind for that reason. The theory of her case is based on *Nance v. Sexton*, 199 Mo.App. 461, 203 S.W. 649 (1918), which holds that one who fails to disclose his lack of title or bona fide claim of ownership cannot make a valid executory contract for the sale of land because of lack of mutuality, thereby permitting the proposed purchaser to repudiate the contract.

But *Nance* does not apply here, for the circumstances are substantially dissimilar. In *Nance* there was an apparent fraudulent concealment as the seller did not have the slightest wisp of title to the property to be sold with scarce prospect that he could deliver. The concern about mutuality is not applicable in this case. Though the Perkinsons had title to only two acres, Mr.

Perkinson was president and sole stock holder of the company which owned the balance. Linclay was not bridled in any way from transferring the property, and its financial status offered no apparent impediment. Thus, the Perkinsons could readily provide specific performance of the contract and could ensure they would have sufficient title to convey the property on the closing date. As there was no evidence of fraud, misrepresentation or impossibility of correction of title or conveyance—necessary elements to allow contract rescission—Mrs. Burford's complaint is too flimsy to warrant her repudiation of the contract. *See Hellrung v. Hoechst*, 384 S.W.2d 561, 564 (Mo.1964), citing *Annot.*, 109 A.L.R. 242, 244 (1937). Quite clearly the Perkinsons had the capacity and were in position to convey title according to the terms of the sales contract with Mrs. Burford. It was therefore not essential for them to have had some muniment in their names at the time the sales contract was executed. *Schottenstein v. Devoe*, 83 Ohio App. 193, 82 N.E.2d 552 (1948); 77 Am.Jur.2d *Vendor and Purchaser* § 235 (1975). There was therefore no reason for the trial court to give Mrs. Burford's instruction regarding rescission of the sales contract.

Next, Mrs. Burford argues that the trial court erred in failing to define fair market value as the measure of damages. She is correct in her assessment of the law that the appropriate measure of damages in a breach of an improved land sale contract is the difference between the contract price and the fair market value at the time of breach. *Leonard v. American Walnut Co.*, 609 S.W.2d 452, 455 (Mo.App.1980); *Construction Enterprises, Inc. v. Schaeffer*, 562 S.W.2d 799, 800 (Mo.App.1978). Using that precept as a basis, she asserts that the jury should have been given MAI 16.02 which defines the term "fair market value".[1] Instead, the trial court submitted MAI 4.01

and allowed Mrs. Burford's attorney to define fair market value in closing argument. This was proper procedure.

The MAI 4.01 modification that was given in this case provides:

If you find the issues in favor of the plaintiffs on the plaintiffs' claim for damages, then you must award the plaintiffs such sum as you believe will fairly and justly compensate the plaintiffs for any damages you believe they sustained as a direct result of the occurrence mentioned in the evidence.

Though this instruction is primarily for tort actions, its use in breach of contract actions has been given judicial approbation and is congruent with current case law. *Gottlieb v. Hyken*, 448 S.W.2d 617, 621 (Mo.1970); *North County School District R–1 v. Fidelity & Deposit Co.*, 539 S.W.2d 469, 480 (Mo. App.1976); *McAtee v. Greenspon*, 439 S.W.2d 187, 190 (Mo.App.1969); *Stamm v. Reuter*, 432 S.W.2d 784, 786 (Mo.App.1968).

A specific challenge to the use of MAI 4.01 in a breach of real estate contract action was raised in *Boten v. Brecklein*, 452 S.W.2d 86 (Mo.1970).[2] The following from *Boten* provides ready answer to the issue of whether MAI 4.01 without a definition of fair market value is sufficient in a breach of contract case:

It would seem appropriate at this point to consider the contention of defendants that the court erred in giving Instruction No. 6, supra. [M.A.I. 4.01]. They first say that MAI 4.01 is applicable only to tort actions and should not have been used in a breach of contract case; also, that it is too general to be a proper guide for the jury. * * * In *Stamm v. Reuter*, Mo.App., 432 S.W.2d 784, the court held that it was not error to use MAI 4.01 in a breach of contract case. We agree that, at least until a more detailed form is

---

1. MAI 16.02 provides in pertinent part as follows:

   The phrase "fair market value" means the price which the property in question would bring when offered for sale by one willing but not obliged to sell it, and when bought by one

willing or desirous to purchase it but who is not compelled to do so.

\* \* \* \* \* \*

2. The breach involved a lease agreement. Though not a contract for sale of real estate, the principle of *Boten* is appropriate.

provided in MAI, it is appropriate to use 4.01. Moreover, if defendants were of the view that there was no applicable MAI form and that the one offered was too general it was their duty to offer a more specific one. *Miller v. Ranson and Co.*, Mo.App., 407 S.W.2d 48.

*Id.* at 93.

■ From *Boten*, it is apparent that MAI 4.01, without more, is proper for this case. It is also true that it would not be error to have given the jury the MAI 16.02 definition of fair market value, as the measure of damages includes that element. However, by having allowed the attorneys to define fair market value in closing argument, the trial court cannot be convicted of error for failing to supplement MAI 4.01 in the absence of an instruction in "a more detailed form . . . provided in MAI" for breach of real estate sale contracts. *Id.* at 93. And to date, there is no such detailed MAI form provided.

■ Finally, Mrs. Burford contends that the Perkinsons were only acting as agents for Linclay in the sale of the property. Thus, according to Mrs. Burford's argument, it follows that they suffered no loss, and she should have been the beneficiary of a directed verdict. But this argument overlooks the fact that title to the property at the time of the breach was in the Perkinsons and they were the parties to the contract. Rule 52.01 requires that every civil action be prosecuted in the name of the real party in interest, which includes parties having "some actual and justiciable interest susceptible of protection through litigation." *Janssen v. Guaranty Land Title Co.*, 571 S.W.2d 702, 706 (Mo.App.1978). And legal title to the subject matter of the litigation—bare though it be—is sufficient interest. *State ex rel. J. S. Alberici, Inc. v. City of Fenton*, 576 S.W.2d 574, 577 (Mo. App.1979); *Kaufman v. Henry*, 520 S.W.2d 152, 154 (Mo.App.1975).[3]

Another matter which must be considered is Bakewell's request for its real estate com-

mission. The listing contract with the Perkinsons provided that Bakewell was to receive 6% of the selling price of the property if it produced a "willing and able purchaser". The sale contract signed by Mrs. Burford, the Perkinsons and Bakewell's agent and accompanied by a $2500.00 earnest money deposit specifically provided:

> . . . if sale be not closed by date fixed therefor owing to failure of performance by purchaser, earnest deposit shall be forfeited by purchaser but purchaser shall nevertheless be bound to fulfillment of the contract if so determined by seller, but this shall not entitle purchaser to enforce sale. *Forfeited earnest deposit shall first go toward reimbursing expenses of agent incurred in this transaction and balance to go one-half to seller, and one-half to agent in lieu of commission* (emphasis added).

■ It is a general rule that a real estate broker has earned his commission when he produces a buyer whether or not the buyer pays the purchase price. *Chamberlain v. Amick*, 210 S.W.2d 528, 530 (Mo.App.1948). It is on this basis that Bakewell seeks to recover 6% of the $500,000.00 contract price. But the general rule may be qualified by further contract provision, *Chamberlain v. Amick*, 210 S.W.2d at 529–30, with such modification binding on the owner and broker when each has resulting benefits and detriments from the modification. 12 C.J.S. *Brokers* § 125 (1980). *Also see Willhite v. Marlow Adjustment, Inc.*, 623 S.W.2d 254, (Mo.App.E.D.1981), on requirement of consideration for modification of contract.

■ The question of how and when a broker becomes entitled to his commission and the amount thereof depends upon the contract. *Huber v. Gershman*, 300 S.W.2d 501, 505 (Mo.1957); *McIntosh v. Frisinger*, 507 S.W.2d 419, 425 (Mo.App.1974). In this case, the sales contract modified the original listing contract regarding the real es-

---

**3.** *See also Bartlett and Co., Grain v. Commodity Credit Corp.*, 187 F. Supp. 889, 894 (W.D. Mo.1960), *modified on other grounds*, 307 F.2d 401 (8th Cir. 1962), holding that the party in whose name a contract is made is the proper party to bring suit.

tate commission. By executing it with the Perkinsons and Mrs. Burford, Bakewell effectively limited its fee on default of the purchaser to one-half the earnest money deposited rather than 6% of the sales price. The Perkinsons yielded on seeking the original $750,000 listing price, and Bakewell was no longer required to actively search for a buyer. So ample consideration existed for the change in commission Bakewell would receive.

■ Bakewell insists that it was at least a jury question as to whether the Perkinsons caused the default, thus entitling it to the 6% commission. However, there was no evidence that the Perkinsons either breached the contract or generated its failure. Further, the jury necessarily resolved this issue for the Perkinsons and against Mrs. Burford by returning a verdict in their favor.

■ For the first time on this appeal the Perkinsons have raised the point that Bakewell has retained the entire earnest money deposit, whereas the terms of the sales contract provide that the money should be divided equally. No such relief was sought in the trial court nor was any appeal taken. So we have no viable issue before us on this matter. This is the same circumstance as existed in *Huber v. Gershman*, 300 S.W.2d at 505. The parties are referred to that case for guidance.

Judgment affirmed.

PUDLOWSKI, P. J., and WEIER, J., concur.