**SPECIALTY RESTAURANTS CORPORATION, Defendant–Appellant,**

v.

**ADOLPH K. FEINBERG REAL ESTATE COMPANY, INC., Defendant–Respondent.**

**No. 54591.**

Missouri Court of Appeals, Eastern District, Division Four.

March 21, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 18, 1989.

Application to Transfer Denied June 13, 1989.

Mark G. Arnold, Joseph P. Conran, St. Louis, for defendant-appellant.

Jerry A. Klein, Clayton, for defendant-respondent.

SMITH, Presiding Judge.

Defendant, Specialty Restaurants Corporation, appeals from a judgment in favor of Adolph K. Feinberg Real Estate Company in a suit for a real estate commission tried to the court. We reverse.

The litigation originally involved, in addition to the present parties, R.S.R. Ltd. and Belle Angeline Inc. Those two companies, as plaintiffs, sued Specialty for breach of contract and were awarded total judgments exceeding $500,000 against Specialty. After notices of appeal were filed a settlement between R.S.R., Belle Angeline and Specialty was effectuated and Specialty's appeals as to those parties have been dismissed.

In September 1983, Specialty entered into contracts with R.S.R. and Belle Angeline for the purchase of the Belle Angeline boat restaurant on the St. Louis riverfront. Separate contracts with R.S.R. and Belle Angeline were required because R.S.R. owned the boat and Belle Angeline owned the furnishings. Both contracts were also signed by John Flynn, an employee of Feinberg. Both provided for payment "as per agreement" of a commission to Feinberg by R.S.R. and Belle Angeline. The contracts also provided for earnest money in the total amount of $25,000.

By agreement between R.S.R., Belle Angeline and Feinberg, dated September 30, 1983, R.S.R. and Belle Angeline agreed to pay Feinberg "on the sale" a commission of $47,000. The September contracts contained a contingency based upon Specialty obtaining a mooring permit on the St. Louis riverfront. Because of difficulty in obtaining the permit new contracts were entered into on January 26, 1984, eliminating that contingency and reducing the purchase price. Those contracts were not executed by Feinberg. The January contracts provided for a $25,000 earnest money deposit and provided in the general sales conditions:

"... if sale be not closed by date fixed therefor owing to failure of performance by purchaser, earnest deposit shall be forfeited by purchaser, but purchaser shall nevertheless be bound to fulfillment of contract if so determined by seller, but this shall not entitle purchaser to enforce sale. Forfeited earnest deposit shall go first toward reimbursing expenses of agent incurred in this transaction, and balance to go one-half to seller and one-half to agent *in full of commission.*" (Emphasis supplied).

Equivalent language had been in the September contracts. On January 16, 1984, R.S.R. and Belle Angeline had executed another agreement to pay Feinberg a $47,000 commission " ... on the sale of the Belle Angeline, Inc., and R.S.R., Ltd....."

In a cross-claim Feinberg sought recovery of a commission of $47,000 against Specialty. The trial court entered judgment favorable to Feinberg on that claim. The basis for that award is not clear from the trial court's conclusion of law on this issue which reads:

"Since defendant Specialty failed to purchase the boat and furniture, fixtures and equipment, defendant Feinberg would ordinarily be required to pay one-half of the earnest money deposit to

Belle, but plaintiff Belle shall be made whole by its award of damages against defendant Specialty. Defendant Feinberg has also been damaged by defendant Specialty's breach, by reason of the fact that defendant Feinberg lost its commission when defendant Specialty breached its agreement to purchase the boat and furniture, fixtures and equipment. Defendant Feinberg is therefore entitled to, and judgment is hereby entered in favor of defendant Feinberg and against Specialty ..."

Feinberg does not attempt to justify the award on the basis that it was a third-party beneficiary of the January 26 contract. Specialty devotes considerable discussion in its brief to that issue on the ground that that was the theory advanced in the trial court. We need not dwell long on that matter nor do we find it necessary to address the general rules of third-party beneficiary contracts or analyze Feinberg's status as to whether it is a creditor, donee or incidental beneficiary.

The parties to the January 26 contract addressed themselves specifically to the commission to be received by Feinberg in the event of default by Specialty. It allowed Feinberg one-half of the earnest money "in full of commission." That provision in a contract to which Feinberg was not a party may or may not affect its rights to a full commission as between it and R.S.R. and Belle Angeline. The whole concept of the third-party beneficiary status is that the parties have by their contract sought to protect the interest of the third-party giving him a right to enforce the contract in his own right. *Laclede Investment Corporation v. Kaiser*, 596 S.W.2d 36 (Mo.App.1980) [7–10]. To the extent the parties here have sought to protect Feinberg at all, it is by providing Feinberg is to receive one-half of the earnest money deposit as its full commission in the event of default by Specialty. As a third-party beneficiary Feinberg can enforce the contract for the amount of protection afforded it by the contract. But it cannot rise above the protection accorded by the parties. Its right to maintain an action on the contract must spring from the terms of the contract itself. *Id.* [13]. Feinberg is already in possession of the earnest money, the court judgment against Specialty on plaintiffs' claims establishes that Specialty has breached the contract, and that in turn establishes that Specialty has no right to its return. Whatever rights Feinberg might have as a third-party beneficiary, Specialty has no further obligations to it under the January 26 contract. We are neither holding nor implying that Feinberg is in fact a third-party beneficiary, but only that whatever it was entitled to under the January 26 contract it already has.

Feinberg advances the theory that despite the absence of a contract with Specialty for payment of its commission it is entitled to seek its lost commission because Specialty's breach was the cause of its loss of its full commission. It relies upon *Ellsworth Dobbs, Inc. v. Johnson*, 50 N.J. 528, 236 A.2d 843 (1967). That court, seeking a "new and more realistic approach" to the problem of real estate broker commissions where breach of the sales contract by the purchaser has occurred, established what appears to be a comprehensive equitable approach to the problem. It held: (1) that the broker does not become entitled to his commission from the seller until the purchaser has performed his contract, (2) that where the purchaser breaches the broker may sue the purchaser for his commission even though he has agreed to look to the vendor for his commission, and (3) if the seller sues the purchaser for breach of the contract and recovers damages therefor he must be considered to have received an award representing the benefit lost or an agreed payment representing the equivalent of performance in which case the seller is deemed to have accepted the benefit of the broker's services, and is liable for the commission. The recovery by the broker against the purchaser delineated in the *Ellsworth Dobbs* case is available only when the seller has chosen not to seek or obtain damages representing the substantial equivalent of performance by the buyer.

 We are unable to find that the analysis utilized in the *Ellsworth Dobbs* case has been recognized in Missouri. The question of when and how a broker becomes entitled to his commission depends upon his contract. *McIntosh v. Frisinger,* 507 S.W.2d 419 (Mo.App.1974) [1, 2]. There is a law in Missouri that if the contract of the broker provides for a commission upon production of a ready, willing, and able buyer the commission has been earned upon execution of a sale contract by such a buyer whether or not the contract is in fact executed. *Id.* [5]; *Perkinson v. Burford,* 623 S.W.2d 30 (Mo.App.1981) [9]. Those cases are contrary to the first holding of the *Ellsworth Dobbs* case. Nor have we found any case in Missouri where a breaching purchaser has been held liable to the broker for a commission in the absence of a contract or a circumstance where the broker's efforts were originally solicited by the purchaser. *McIntosh, supra* [6]; *Shepley v. Green,* 243 S.W.2d 772 (Mo.App.1951); *Cavender v. Waddingham,* 2 Mo.App. 551 (1876), overruled on other grounds, 140 Mo.App. 63, 119 S.W. 967. The record does not establish that Specialty solicited Feinberg.

Regardless, however, of the validity of the second holding of the *Ellsworth Dobbs* case, its third holding clearly precludes Feinberg from recovery here. The sellers have pursued their claim for damages against Specialty and have recovered a judgment against Specialty equivalent to performance of the contract. Under the third holding they have thereby accepted the equivalent of performance and if a commission is owed it is from R.S.R. and Belle Angeline pursuant to their contract with Feinberg. We find no legal basis under Missouri law for recovery by Feinberg against Specialty, with whom it had no contractual relationship, nor any right to such recovery under the "new and more realistic approach" of the New Jersey court.

Specialty claims it is entitled to $12,500 of the earnest money deposit from Feinberg representing the share of Belle Angeline which it has allegedly already received by virtue of the judgment and settlement. Specialty breached the contract and forfeited the money. Whatever set-off it might have been entitled to has been determined in its suit with R.S.R. and Belle Angeline and cannot be relitigated in this appeal. It has, by its own argument, no contractual relationship with Feinberg. There is no basis for such a claim.

Judgment in favor of Feinberg and against Specialty is reversed.

STEPHAN and SATZ, JJ., concur.